Jean BELANGER, Plaintiff–Appellant,

v.

MADERA UNIFIED SCHOOL DIS-TRICT; Board of Trustees of Madera Unified School District; Thomas J. Riley, School Superintendent, Defendants–Appellees.

No. 90–16831.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 1992.

Decided April 29, 1992.

Michael E. Smith and Ellen M. Jahn, Lozano, Smith, Smith, Woliver & Behrens, Fresno, Cal., for defendants-appellees.

Larry J. Frierson and Melanie M. Poturica, Liebert, Cassidy & Frierson, Los Angeles, Cal., for amicus curiae.

Before: HALL and WIGGINS, Circuit Judges, and MUECKE *, District Judge.

WIGGINS, Circuit Judge:

## OVERVIEW

Jean Belanger, plaintiff/appellant, appeals the district court's grant of summary judgment in favor of the Madera Unified School District (school district), defendant/appellee. Belanger argues that the district court erred in finding that the school district is immune to suit under the Eleventh Amendment. Belanger filed a timely notice of appeal on November 30, 1990, and this court has jurisdiction under 28 U.S.C. § 1291 (1988). We affirm.

## BACKGROUND

At the start of the 1988–89 school year, Belanger was removed from her position as principal at the Ripperdan Elementary School and reassigned to a classroom teaching position. Belanger alleges she was reassigned because of her gender and in retaliation for testifying against the school district in a separate discrimination action. The school district disputes Belanger's allegations and claims that Belanger was reassigned because of her extremely poor performance as a principal. According to the school district, Belanger failed to work effectively with parents and teachers and illegally altered student records. This allegedly caused the district to receive continuous complaints from parents and teachers about Belanger and resulted in six of

Mary Louise Frampton, Frampton, Soley, Hoppe, Williams & Boehm, Fresno, Cal., for plaintiff-appellant.

---

* Hon. C.A. Muecke, Senior United States District Judge for the District of Arizona, sitting by designation.

Ripperdan Elementary's nine teachers leaving the school.

On March 20, 1989, Belanger brought an action against the school district under 42 U.S.C. § 1983 (1988). Belanger engaged in extensive discovery to obtain evidence showing that a judgment against the school district would not be satisfied out of state funds. After this discovery, the district court granted the school district's motion for summary judgment. The district court determined that as a matter of law the school district is a state agency that is immune from suit under the Eleventh Amendment to the United States Constitution.

## DISCUSSION

■ The only issue on appeal is whether the school district is a state agency for purposes of the Eleventh Amendment.[1] This issue turns on the application of law to established facts. Thus, the grant of summary judgment is reviewed de novo to determine whether, viewing the evidence in a light most favorable to Belanger, the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989); *see also United States v. McConney*, 728 F.2d 1195, 1204 (9th Cir.) (en banc) (application of law to established facts is reviewed de novo), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the exact limits of the Eleventh Amendment are difficult to determine,[2] it is clear that the Eleventh Amendment prohibits actions for damages against state agencies when Congress has failed to express a contrary intent. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985) (congressional intent to override the principles of sovereign immunity embodied in the Eleventh Amendment must be "unmistakably clear"). In this case, Belanger concedes that her claims for damages are barred if the school district is indeed a state agency for purposes of the Eleventh Amendment. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (state governments and their agencies are not amenable to suit under 42 U.S.C. § 1983).

■ Whether the school district is a state agency for purposes of the Eleventh Amendment turns on the application of the multi-factored balancing test summarized in *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988), *cert. denied*, 490 U.S. 1081, 109 S.Ct. 2102, 104 L.Ed.2d 663 (1989).

To determine whether a governmental agency is an arm of the state, the following factors must be examined: [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the

1. The district court also ruled that injunctive relief was barred by the Eleventh Amendment because such relief would be retrospective in nature, citing *Papasan v. Allain*, 478 U.S. 265, 277–78, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986). Belanger fails to raise this issue in her statement of issues presented for review, and she does not discuss this issue in her opening brief. Instead, Belanger addresses this issue for the first time in a footnote in her reply brief, depriving the school district of the opportunity to address Belanger's argument. Because "appellants cannot raise a new issue for the first time in their reply briefs," we decline to consider Belanger's argument on the issue of injunctive relief. *Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir.1990) (quoting *United States v. Birtle*, 792 F.2d 846, 848 (9th Cir.1986)).

2. Compare *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 14–19, 109 S.Ct. 2273, 2281, 105 L.Ed.2d 1 (1989) (Brennan. J., joined by Marshall, J., Blackmun, J., and Stevens, J.) (Congress has the power to abrogate Eleventh Amendment immunity when legislating pursuant to the Commerce Clause) *with id.* at 35–42, 109 S.Ct. at 2299–2302 (Scalia, J., joined by Rehnquist, C.J., O'Connor, J., and Kennedy, J.) (Congress cannot abrogate Eleventh Amendment immunity under the Commerce Clause).

power to take property in its own name or only the name of the state, and [5] the corporate status of the entity. *Id.* (citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir.1982)). We must examine these factors in light of the way California law treats the governmental agency. *Id.* As indicated by the reasoning and holding in *Mitchell*, the first factor is predominant: "The most 'crucial question ... is whether the named defendant has such independent status that a judgment against the defendant would not impact the state treasury.'" *Jackson*, 682 F.2d at 1350 (quoting *Ronwin v. Shapiro*, 657 F.2d 1071, 1073 (9th Cir.1981)); *see also Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974) (if a "retroactive award of monetary relief" will be paid from state treasury funds, it is barred by the Eleventh Amendment); *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345, 1349 (9th Cir.1981) ("Obviously the source from which the sums sought by the plaintiff must come is the most important single factor in determining whether the Eleventh Amendment bars federal jurisdiction."), *aff'd on other grounds sub nom. Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983).

### A. Application of the *Mitchell* Factors

■ An analysis of the five *Mitchell* factors demonstrates that the school district in this case is a state agency for purposes of the Eleventh Amendment. Although Belanger's view of certain factors are not without merit, Belanger cannot prevail on the first and most important factor because a judgment against the school district would be satisfied out of state funds. Moreover, under California law, the school district is a state agency that performs central governmental functions. Thus, the school district is protected by the Eleventh Amendment.

### 1. A Money Judgment Would Be Satisfied Out of State Funds

Unlike most states, California school districts have budgets that are controlled and funded by the state government rather than the local districts. As in *Mitchell*, the school district's budget in this case "is made up of funds received from the state's general fund pursuant to a state calculated formula." 861 F.2d at 201. California's centralized control of school funding can be attributed to two key factors—decisions by the California Supreme Court in 1971 and 1976, and the adoption of Proposition 13 in 1978.

In *Serrano v. Priest*, 5 Cal.3d 584, 96 Cal.Rptr. 601, 487 P.2d 1241 (1971) (*Serrano I*), the California Supreme Court determined that the system of public school financing in California that failed to equalize school spending for each student was unconstitutional. The California legislature responded by enacting Senate Bill 90 in an attempt to equalize public school funding. The legislature significantly increased state funding for school districts and created "revenue limits"—limits on the expenditures per pupil in school districts with ample local funding. *See Serrano v. Priest*, 18 Cal.3d 728, 135 Cal.Rptr. 345, 347-52, 557 P.2d 929, 931-36 (1976) (*Serrano II*), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2951, 53 L.Ed.2d 1079 (1977).

However, the California Supreme Court was still unsatisfied because the legislature had provided for voter overrides and permissive overrides—special exceptions to the revenue limits. In *Serrano II*, the California Supreme Court ruled that the equal protection provisions of the California Constitution require strict statewide equalization of school spending per pupil. Under *Serrano II*, the state has a duty to ensure that all school districts receive an equal amount of funding per student. Thus, the state must prevent wealthier districts from raising too much local revenue, enabling California to equalize school district budgets through state spending. *See* 135 Cal. Rptr. 345, 374, 557 P.2d at 937, 958.

Proposition 13's property tax limitations inadvertently helped California achieve the result mandated in *Serrano II*. By reducing and capping the property tax revenues used to fund local schools, Proposition 13 ensured that the state, rather than local school districts, would control funding for public schools.

The result of the *Serrano* decisions and Proposition 13 has been strict state control of public school funding. The state sets a revenue limit for each school district based on average attendance, subtracts property tax revenues from that limit, and allocates the balance to the school district from the state school fund. *See generally* Cal.Educ. Code §§ 41600–41610, 42238–42251 (West 1978 & Supp.1992). In short, the state determines the amount of money that school districts may spend per pupil and then provides the necessary state funds.

In the present case, Belanger concedes that seventy-five percent of the school district's budget comes directly from the state school fund. However, Belanger argues that a judgment might be satisfied out of other funds in the district's budget derived from local property taxes. According to Belanger, "There is simply no way of knowing whether a money judgment in this litigation would be paid from state funds or local funds or a combination of both."

In light of California's centralized school funding system, this argument is irrelevant. Under the revenue limit system, state and local revenue is commingled in a single fund under state control, and local tax revenue lost to a judgment must be supplanted by the interchangeable state funds already in the district budget. Any local funds withdrawn from the budget to pay a judgment are unavailable for educational purposes, and state funds in the budget must cover any critical educational expenses that the local funds would have covered absent the judgment. This effectively draws state funds away from other programs in the budget to pay the judgment. In essence, any use of the commingled funds is a use of state funds. *See*

*Mitchell,* 861 F.2d at 201 (stressing that "the district's budget is made up of funds received from the state's general fund pursuant to a state calculated formula").

Moreover, the local character of property tax revenue is lost when it is commingled with state funds under a state controlled revenue limit. As the district court noted, "If the entitlement from the property tax decreases, the amount of the revenue limit entitlement funded by the state increases, and vice-versa." Under the centralized revenue limit system, the allocation of property tax revenue is hopelessly intertwined with the allocation of state funds, and any change in the allocation of property tax revenue has a direct effect on the allocation of state funds.[3]

Finally, because the state has complete control over the amount of property tax revenue that the district receives, and because this revenue is simply credited toward the revenue limit payment from the state fund, the property tax revenue is no more local than state income taxes generated from the same area. The state has assumed the burden of funding public schools, and property tax revenue allocated to the public school revenue limit program is state money collected for a state purpose.

In summary, the bulk of the school district's budget comes directly from the state school fund, and the property tax revenue in the budget is interchangeable with the state funds and is treated as state funds for all practical purposes. Under California's revenue limit system, a judgment against the school district would be satisfied from state funds.

---

**3.** According to Belanger, the *Mitchell* decision is flawed because it incorrectly states that "some fees charged by the district's colleges go to the state." 861 F.2d at 201. Belanger's complaints about *Mitchell* ignore the key point that state and local funds are interchangeable and hopelessly commingled under California's school funding system. Whether the technical accounting procedures list the fees as going into the state fund before they are paid back to the college district is irrelevant. In any practical sense, these fees are state funds under state control. The fees are credited against the state

payments to the community college district. The practical result is the same as if the fees had been directly collected by the state.

Belanger also argues that the *Mitchell* precedent should be reconsidered because the plaintiff in *Mitchell* was not represented by counsel and did not conduct discovery. According to Belanger, the *Mitchell* decision rests on an inadequate record. As the district court pointed out, Belanger asserts no authority for the proposition that this court may reevaluate the factual findings in *Mitchell*. We find that *Mitchell* controls the case at bar.

## 2. Public Schooling Is a State Function Under California Law

California law treats public schooling as a statewide or central governmental function. As discussed above under the first *Mitchell* factor, California has assumed total control over the funding of public schools. Moreover, California exercises substantial centralized control over other public school decisions. For example, the state government dictates when students may be expelled or suspended, Cal.Educ. Code § 48900 (West Supp.1992), and the state exercises control over the textbooks that are used in public schools. Cal. Const. art. IX, § 7.5 (West Supp.1992); Cal.Educ. Code § 51510 (West 1989). In addition, the California Superintendent of Public Instruction has broad authority to "[s]uperintend the schools of this state." Cal.Educ. Code § 33112(a) (West 1978).

California public schools have long been treated as state agencies under California law. The California Constitution requires the state legislature to "provide for a system of common schools" and sets forth detailed requirements for those schools. Cal. Const. art. IX, §§ 5, 6 (West 1954 & Supp.1992). In *Hall v. City of Taft,* 47 Cal.2d 177, 302 P.2d 574 (1956), the California Supreme Court recognized that public schools are a central government function in California:

> The public schools of this state are a matter of statewide rather than local or municipal concern; their establishment, regulation and operation are covered by the [state] Constitution and the state Legislature is given comprehensive powers in relation thereto.

*Id.* at 576. The *Hall* decision went on to emphasize that "[s]chool districts are agencies of the state for the local operation of the state school system." *Id.* at 577.

Belanger argues that school districts enjoy wide discretion and considerable autonomy since the enactment of Cal.Educ.Code § 35160.1 in 1987. However, section 35160 does not change the fact that public schooling is considered a central governmental function under California law and that school districts are considered agents of the state in carrying out this function. As Belanger recognizes, it is the *state legislature* that has acknowledged the local needs of the individual school districts throughout the state. That the state itself has decided to give its local agents more autonomy does not change the fact that the school districts remain state agents under state control.

California law is well settled that providing public education is a state function.

> Leaving aside for the moment statutes and regulations, which more specifically delineate state supervision of education, a perusal of the foregoing constitutional provisions and the cases interpreting them leaves no doubt that, as has been repeatedly held by California courts, the management of public schools in California is a matter of statewide supervision rather than a local concern. Moreover, the Legislature has plenary authority over the education of California's youth. Thus, although the state can assign certain duties with respect to the local operation of schools to local agencies, it cannot by such incidental delegations abdicate its role as the entity ultimately responsible for the proper and lawful functioning of the state's schools.

*San Francisco NAACP v. San Francisco Unified School Dist.,* 484 F.Supp. 657, 662 (N.D.Cal.1979) (citations omitted); *see also Stones v. Los Angeles Community College Dist.,* 572 F.Supp. 1072, 1077 (C.D.Cal.1983) ("Under California law, the education of the citizenry is an exclusive state function that cannot be delegated."), *aff'd on other grounds,* 796 F.2d 270 (9th Cir.1986).

Belanger is correct that public schooling is usually considered to be a local governmental function. However, through the state constitution, statutes, and supreme court decisions, California has made public schooling a state governmental function. Because the panel's analysis must be governed by "the way state law treats the [school district]," *Mitchell,* 861 F.2d at 201, Belanger's argument fails. Under California law, school districts are agents of the state that perform central governmental functions.

### 3. School Districts Can Sue and Be Sued

It is undisputed that California school districts can sue and be sued in their own name. Cal.Educ.Code § 35162 (West 1978). Thus, the district court is correct that this factor militates against a finding of Eleventh Amendment immunity. However, it does not necessarily follow that the school district can be sued for money damages just because it can be sued in its own name. If a school district is a state agency for purposes of the Eleventh Amendment, suits against the district in its own name are subject to the same Eleventh Amendment constraints as suits against the state. Therefore, although this third *Mitchell* factor deserves some consideration, this factor is entitled to less weight than the first two factors.

### 4. School Districts Can Own Property

It is also undisputed that school districts can hold property in their own name. Cal. Educ.Code § 35162. However, California law still treats such property as state property rather than local government property: "The beneficial ownership of property of the public schools is in the state." *Hall,* 302 P.2d at 577. Thus, although the district court found that this factor militates against Eleventh Amendment immunity, the property ownership analysis is a close question and for this reason is entitled to little weight in the overall balance.

### 5. School Districts Have the Corporate Status of State Agents

Belanger argues that the fifth *Mitchell* factor provides no guidance in resolving the Eleventh Amendment immunity issue. Belanger focuses on the fact that school board members are often viewed as both "municipal officers" and "state officers." This argument ignores the fact that "[s]chool districts are agencies of the state for the local operation of the state school system." *Hall,* 302 P.2d at 577. We agree with the district court's conclusion that school districts have the corporate status of agents of the state for purposes of school administration.

### B. The *Mount Healthy* Analogy

Belanger relies heavily on *Mount Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 280–81, 97 S.Ct. 568, 573, 50 L.Ed.2d 471 (1977) and argues that the California school district in this case is analogous to the school district in *Mount Healthy.* However, Belanger ignores the key differences between the Ohio school district in *Mount Healthy* and the school district in this case.

In *Mount Healthy,* the key factor was the treatment of the school district under Ohio state law: "Under Ohio law the 'State' does not include 'political subdivisions,' and 'political subdivisions' do include local school districts." *Id.* at 280, 97 S.Ct. at 572. Under California law, school districts are not political subdivisions, but rather agents of the state itself. Moreover, "local school boards [in Ohio] have extensive powers to issue bonds and to levy taxes within certain restrictions of state law." *Id.* (citations omitted). In California, the state has assumed responsibility for and control over school funding. Under California's revenue limit system, any local revenue is simply credited against the state school fund payments, and there is little local autonomy in school funding.

In the critical area of school funding, around which this litigation revolves, California has selected a different path from that of most states. California has vested control of school funding in the state rather than local governments. Thus, the school district in this case is easily distinguished from the Ohio school district in *Mount Healthy.*

### CONCLUSION

The district court correctly applied the *Mitchell* test and determined that the school district was immune to suit under the Eleventh Amendment. The court determined that the school district is an agent of the state that performs state governmental functions and that a judgment would be satisfied out of state funds. We are in agreement with the district court and can find no error in the court's analy-

sis. Therefore, we AFFIRM the district court's decision.

AFFIRMED.