**ALASKA CARGO TRANSPORT, INC., Plaintiff–Appellant,**

v.

**ALASKA RAILROAD CORPORATION; Frank Turpin; Marty Keale; Richard Knapp; Denny Robertson; Laurie Gray; Arnold Polanchek, Defendants–Appellees.**

No. 92–35027.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 2, 1993.

Decided Sept. 17, 1993.

Thomas J. Greenan, Christopher Kane, Schwabe, Williamson, Ferguson & Burdell, Seattle, WA, for plaintiff-appellant.

Thomas J. Brewer, Gregory M. O'Leary, Molly B. Burke, and Tamara Jill Conrad, Heller, Ehrman, White & McAuliffe, Seattle, WA, William R. Hupprich, Alaska R.R. Corp., Anchorage, AK, for defendants-appellees.

Before: SCHROEDER, FLETCHER, and ALARCON, Circuit Judges.

FLETCHER, Circuit Judge:

Appellant Alaska Cargo Transport, Inc. ("Alaska Cargo") appeals the district court's dismissal of its complaint with prejudice as to federal claims and without prejudice as to state claims. The court held that appellee Alaska Railroad Corp. ("ARRC") is immune from suit under the Eleventh Amendment. We have jurisdiction over the timely filed appeal pursuant to 28 U.S.C. § 1291 (1988). We affirm.

## I. Facts

ARRC does not dispute the district court's recitation of the facts and summary of the allegations in Alaska Cargo's second amended complaint:

Alaska Cargo, a Washington corporation[,] is in the business of providing freight and rail car transportation services from Seattle, Washington, to Seward, Alaska. . . .

ARRC is an Alaska corporation which provides rail service to the cities of Anchorage, Fairbanks, Seward, and Whittier, Alaska.

Prior to 1986, Alaska Cargo based its business operation in the cities of Kenai and Anchorage. In June or July of 1986, representatives of ARRC contacted Alaska Cargo regarding a move of Alaska Cargo's business operations from Kenai and Anchorage to Seward. Alaska Cargo alleges that it was contacted by ARRC concerning the move to Seward as part of a marketing venture to increase utilization of rail services out of Seward to points north of the port.

On or about July 31, 1986, representatives of Alaska Cargo and ARRC met at a restaurant in Seattle, Washington. . . .

Alaska Cargo's complaint alleges that a verbal contract was entered into between Alaska Cargo and ARRC. The terms of the alleged agreement included favorable tariff rates and wharfage charges which ARRC would charge Alaska Cargo at ARRC's terminal in Seward. Alaska Cargo asserts that the existence of the contract was recognized by ARRC personnel at a later meeting held at a restaurant in Anchorage in September of 1986.

On October 30, 1986, believing that an agreement had been reached, Alaska Cargo made an initial shipment from Seattle to Seward. Things did not go according to plan, for when the Alaska Cargo barge arrived, ARRC refused to let it to dock. Relations between the two entities worsened with ARRC contending that no contract had been reached or entered into.

Alaska Cargo filed suit . . . on July 5, 1990, alleging a cause of action against ARRC for breach of contract, defamation, antitrust violations, and unfair trade practices, and seeking injunctive relief. Alaska Cargo also brought suit against Hydro–Train [, another Washington-based freight transporter,] claiming that, on receiving notice of the favorable rates given Alaska Cargo, Hydro–Train threatened ARRC with the removal and cessation of its Whittier operations unless the arrangements with Alaska Cargo were terminated. Alaska Cargo believes the foregoing amounts to tortious interference with contract, conspiracy in restraint of trade, and an attempt to monopolize.

On November 6, 1990, ARRC filed a motion to dismiss pursuant to Rule 12(b)(1) and (6), Federal Rules of Civil Procedure, claiming that since it was an instrumentality of the State of Alaska, the Eleventh Amendment of the United States Constitution prohibits suits by state citizens against it in federal court. Additionally, the motion claims that the state action doctrine, Noerr–Pennington Doctrine, Local Government Antitrust Act, and Keough Doctrine all require that this court refrain from exercising its jurisdiction over this suit.

*Alaska Cargo Transp., Inc. v. Alaska R.R.,* 834 F.Supp. 1216, 1218–19 (D.Alaska 1991) (footnotes omitted).

## II. Discussion

### A. *Eleventh Amendment immunity*

■ The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.[1] Courts have interpreted it to bar suits in federal court against non-consenting states brought either by citizens of that state or another state. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974) (citing cases). Agencies of the state are also immune.[2] *Durning v. Citibank, N.A.,* 950 F.2d 1419, 1422–23 (9th Cir.1991) (citing, *inter alia, State Highway Comm'n v. Utah Constr. Co.,* 278 U.S. 194, 199, 49 S.Ct. 104, 106, 73 L.Ed. 262 (1929) (Eleventh Amendment immunizes state agency that was "but the arm or *alter*

---

**1.** The issue of ARRC's immunity from suit under the Eleventh Amendment is a question of law reviewed de novo. *See Durning v. Citibank, N.A.,* 950 F.2d 1419, 1422 (9th Cir.1991).

**2.** The state, of course, may affirmatively consent to suit. In addition, Congress may abrogate Eleventh Amendment immunity. *See infra.*

*ego* of the State")). The rationale is that a plaintiff who successfully sued an arm of the state would have a judgment with " 'the same effect as if it were rendered against the State for the amount specified in the complaint.' " *Id.* at 1423 (quoting *Smith v. Reeves,* 178 U.S. 436, 439, 20 S.Ct. 919, 920, 44 L.Ed. 1140 (1900)). When a state entity is sued, the state itself is the " 'real, substantial party in interest.' " *Id.* (quoting *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)).

*Mitchell v. Los Angeles Community College Dist.,* 861 F.2d 198, 201 (9th Cir.1988), *cert. denied,* 490 U.S. 1081, 109 S.Ct. 2102, 104 L.Ed.2d 663 (1989), sets out five factors to consider in determining whether an entity is a state arm entitled to immunity:

> "[1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity."

*See Belanger v. Madera Unified Sch. Dist.,* 963 F.2d 248, 250–51 (9th Cir.1992) (quoting *Mitchell,* 861 F.2d at 201), *cert. denied,* —— U.S. ——, 113 S.Ct. 1280, 122 L.Ed.2d 674 (1993); *Durning,* 950 F.2d at 1423 (same). We examine these factors in light of ARRC's treatment under Alaska law. *See Belanger,* 963 F.2d at 251; *Durning,* 950 F.2d at 1423.

We conclude that ARRC is an "arm of the state." The most critical factor, the first one noted in *Mitchell,* is whether a judgment would impact the state treasury. *Jackson v. Hayakawa,* 682 F.2d 1344, 1350 (9th Cir. 1982) (quoting *Ronwin v. Shapiro,* 657 F.2d 1071, 1073 (9th Cir.1981)); *see also Rutledge v. Arizona Board of Regents,* 660 F.2d 1345, 1349 (9th Cir.1981) ("[T]he source from which the sums sought by the plaintiff must come is the most important single factor in determining whether the Eleventh Amendment bars federal jurisdiction.").

ARRC concedes that, under state law, it, and not the state, is liable for a judgment against it. Alaska Stat. §§ 42.40.500, .900(a) (1992). Section 42.40.500 provides that "[a] liability incurred by the [ARRC] shall be satisfied exclusively from the assets or revenue of the [ARRC] and no creditor or other person has a right of action against the state because of a debt, obligation, or liability of the [ARRC]." Alaska Stat. § 42.40.500. Section 42.40.900(a) provides that "[a]ll claims and lawsuits involving activities of the railroad, including suits in contract, quasi-contract, or tort, shall be brought against the corporation and not against the state." *Id.* § 42.40.900(a).

In light of these statutory provisions, ARRC must show that although the state is not directly liable for a judgment against ARRC, the state is nonetheless the "real, substantial party in interest." *Durning,* 950 F.2d at 1423 (internal quotation marks omitted). In determining whether ARRC can sustain this burden, we must take care not to lose sight of "the nature of the entity created by state law." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). Thus, we cannot divorce the second *Mitchell* factor, the governmental function ARRC performs, from our assessment of the first factor, which is the impact on the State of Alaska of a judgment against ARRC.

"[T]he entity created by state law" here is a unique and essential fixture in the lives of thousands of widely dispersed Alaskans. State law authorizes and requires ARRC to manage and operate a critical transportation, supply, and communication network running from Seward and Whittier (warm water ports) in southern Alaska to Fairbanks, in south-central Alaska. Alaska Railroad Corporation Act, 1984 Alaska Sess. Laws ch. 153. At Fairbanks, goods, services, and other essentials, of all types, are distributed into commerce streams reaching even further into the rugged outer reaches of central and northern Alaska. There can be no argument but that ARRC is the "[s]tate-owned railroad" upon which "many communities and individuals in Alaska are wholly or substantially dependent ... for freight and passenger service," service that is an "essential government function." 45 U.S.C. §§ 1201,

1202(14) (1988).[3] The Railroad is the lifeline for many Alaskans in ways that highways are in the Lower 48.

In its brief, Alaska Cargo virtually concedes that the railroad performs a vital governmental function; the legislature has declared that "[t]he continued operation of the Alaska Railroad by [ARRC] as provided in this chapter is considered an essential function of the state." Alaska Stat. § 42.40.010. The uniqueness of Alaska's geography and harsh weather conditions make the operation of the railroad a necessity. It is even today the life-support system for thousands of Alaskans, providing transportation and supplies, and is important in ways that might seem quaintly old-fashioned to most of the rest of the country. It performs a central government function. To ensure that ARRC can perform its vital functions, state law provides to ARRC a financial safety net of broad dimension: ARRC, with the governor's permission, may request "a direct appropriation or grant from the legislature in carrying out the provisions" of its statutory mandate to provide rail services. *Id.* § 42.40.540. It is *required* to seek money from the legislature "to provide a particular service that is not otherwise self-sustaining if a subsidy is required to maintain that service." *Id.* § 42.-40.100(4).

Significantly, federal law further provides that, until 1994, the State of Alaska must continue to provide rail carrier services across its system; otherwise, the real property conveyed to Alaska by the United States government incident to the transfer of the Railroad to the State of Alaska will revert to the federal government, unless Alaska pays the fair market price for the real property. *Id.* §§ 1203(d), 1209; 1984 Alaska Sess. Laws ch. 54. Under state law, ARRC provides those rail carrier services as "an instrumentality of the state within the Department of Commerce and Economic Development." Alaska Stat. § 42.40.010.

Although the Railroad has substantial authority over its operations (it sets the rates it will charge for its services, determines what those services will be, *id.* § 42.40.250(14)–(15), and may exercise the power of eminent domain, *id.* § 42.40.385), state law places many restrictions on it (from the state governor's exclusive power to appoint members to its board, *id.* § 42.40.020, to limitations on land use and line extension, *id.* § 42.40.285, to forbidding it to issue bonds without legislative approval, *id.*, to forbidding it to "issue shares of stock, pay dividends, make private distributions of assets, make loans to board members or employees, or engage in business for private benefit," *id.* § 42.40.300). In addition, ARRC, its board members, and its employees "enjoy the same rights, privileges, and immunities as the state and state officers." *Id.* § 42.40.900(b). This allocation of power persuades us not only that ARRC is an arm of the state, but that its fisc in substantial respects is dependent upon and controlled by the will of the governor and the legislature.

We agree with the district court that, "if faced with a large money judgment, ARRC would be compelled to turn to legislative appropriation in order to remain in business, and the legislature would have to respond favorably so that the 'essential' transportation function would continue to be performed and to protect the state's very substantial investment in the Alaska Railroad." *Alaska Cargo Transp., Inc. v. Alaska R.R.*, at 1221.

ARRC admittedly has the power to sue and be sued. *See* Alaska Stat. § 42.40.-250(3), .900(a). This third *Mitchell* factor, however, "is entitled to less weight than the first two factors." *Belanger*, 963 F.2d at 254. The fourth *Mitchell* factor—ARRC's power to take title to property—also favors a finding of no immunity. ARRC is statutorily authorized to take title to, convey, and encumber property, in its own name. Alaska Stat. § 42.40.250(7), (8), (9), (10), (27).

The fifth *Mitchell* factor, we conclude, weighs in favor of immunity. Although ARRC has a separate corporate status, *id.* § 42.40.010, it is far from autonomous. For instance, the governor appoints all seven of

---

3. The Alaska Railroad Transfer Act of 1982, P.L. 47–468, 45 U.S.C. §§ 1201–1214 (1988), was the statutory vehicle for the transfer of the Alaska Railroad from the federal government to the State of Alaska.

ARRC's board members. *Id.* § 42.40.020. By statute, two state officials, the Commissioner of Commerce and Economic Development and the Commissioner of Transportation, sit on the board. *Id.* Without legislative approval, ARRC may not issue bonds, expand its rail lines, or sign long-term leases. *Id.* § 42.40.285. Without legislative approval, it may not "issue[ ] shares of stock, pay dividends, make private distributions of assets, make loans to board members or employees, or engage in business for private benefit." *Id.* § 42.40.300.

On balance, we conclude that ARRC is entitled to Eleventh Amendment immunity. We are persuaded that a money judgment against ARRC likely would impact Alaska's treasury because of the state's strong interest in keeping ARRC operationally and fiscally sound. We affirm the district court's determination that "ARRC is an alter ego of the State of Alaska and ... immune from suit in federal court." *Alaska Cargo Transp., Inc. v. Alaska R.R.*, at 1222.

### B. *Congressional abrogation*

Alaska Cargo argues that if we were to find that ARRC is an arm of the state, we nonetheless should find that it is not immune under the Eleventh Amendment because Congress has expressly abrogated its immunity. *See Durning*, 950 F.2d at 1423; *see also Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 14–17, 109 S.Ct. 2273, 2281–83, 105 L.Ed.2d 1 (1989) (plurality opinion) (suggesting power to abrogate stems from Commerce Clause). We disagree.

Whether Congress has, in fact, abrogated a state's immunity is determined by a "simple but stringent test: 'Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute.'" *Dellmuth v. Muth*, 491 U.S. 223, 227–28, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985)).

Alaska Cargo relies on 45 U.S.C. § 1207(a)(1) (part of the transfer legislation passed pursuant to the 1984 conveyance of the Alaska Railroad by the United States to Alaska), which, it contends, embodies Congress' express intention to subject the Railroad to federal antitrust laws. Section 1207(a)(1) provides that

> [a]fter the date of transfer to the State pursuant to section 1203 of this title, the State-owned railroad shall be a rail carrier engaged in interstate and foreign commerce subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of subtitle IV of Title 49, and all other Acts applicable to rail carriers subject to that chapter, including the antitrust laws of the United States, except [certain federal acts]. Nothing in this chapter shall preclude the State from explicitly invoking by law any exemption from the antitrust laws as may otherwise be available.

45 U.S.C. § 1207(a)(1). The district court found that whatever Congress was trying to say did not "even remotely approach[ ] the 'unmistakable clarity' that [it] is required to provide when intending to abrogate a state's immunity from suit." *Alaska Cargo Transp., Inc. v. Alaska R.R.*, at 1223. We agree.

Section 1207(a)(1) does not "unequivocally express [Congress'] intention" to override ARRC's Eleventh Amendment immunity, as required by *Atascadero*, 473 U.S. at 243, 105 S.Ct. at 3147, and reconfirmed in *Dellmuth*, 491 U.S. at 230, 109 S.Ct. at 2401: "Lest *Atascadero* be thought to contain any ambiguity, we reaffirm today that in this area of the law, evidence of congressional intent must be both unequivocal and textual. [Alaska Cargo]'s evidence is neither."

Alaska Cargo cites various snippets of *state* legislative history to bolster its contention that state lawmakers knew they had to act to provide an exemption for ARRC. But abrogation is the act of Congress, not the state. The Supreme Court has said that "[i]f Congress' intention is 'unmistakably clear in the language of the statute,' recourse to legislative history will be unnecessary; if Congress' intention is not unmistakably clear, recourse to legislative history will be futile,

because by definition the rule of *Atascadero* will not be met." *Dellmuth*, 491 U.S. at 230, 109 S.Ct. at 2401. State legislative history cannot be used to rescue ambiguous federal legislation. The state could, itself, waive immunity, but there is no suggestion that is has done so.

In short, Congress is capable of doing more than "drop[ping] coy hints"; unless it can be said with "perfect confidence" that it intended § 1207(a)(1) to abrogate sovereign immunity, the "special constitutional concerns" underlying the Eleventh Amendment will prevail. *Id.* at 231, 109 S.Ct. at 2402. " 'A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment.' " *Id.* (quoting *Atascadero*, 473 U.S. at 246, 105 S.Ct. at 3149).[4]

### C. *Discovery stay*

The district court granted ARRC's motion to stay discovery pending disposition of the motions to dismiss. We review this ruling for abuse of discretion. *United States v. Bourgeois*, 964 F.2d 935, 937 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 290, 121 L.Ed.2d 215 (1992).

Alaska Cargo contends that the court's decision was particularly unfair because matters outside the pleadings were considered in ruling on the motions to dismiss. There is no suggestion, however, that the discovery sought was relevant to whether or not the court has subject matter jurisdiction. Had that been the case, the stay would have been improper. The court's ruling, particularly in light of its concern that Alaska Cargo was engaging in "delay [in] responding to the motions to dismiss," was not an abuse of discretion.

**AFFIRMED.**

---

4. The foregoing analysis makes it unnecessary to resolve the *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), state action issue. Similarly, it is unnecessary to consider ARRC's argument that, if Eleventh Amendment immunity and the state action doctrine do not apply, it is immune from antitrust damages under the Local Government Antitrust Act, 15 U.S.C. §§ 34–36. Consideration of the Keogh doctrine may also be eschewed.

