**Rafael HERRERA as Guardian Ad Litem for Peter Liriano, a minor, Plaintiff,**

v.

**Anthony RUSSO, individually and as a police officer of the Clark County School District; Jack Lazzarotto, individually and as Director of Security for the Clark County School District; The Clark County School District, a political subdivision of the State of Nevada Defendants.**

No. CV–S–99–1731RLH(LRL).

United States District Court, D. Nevada.

Aug. 3, 2000.

L. Earl Hawley, Hawley Law Firm, Las Vegas, NV, for Peter Liriano, Rafael Herrera.

C.W. Hoffman, Daniel O'Brien, Clark County School District, Las Vegas, NV, for Clark County School District, Jack Lazzarotto, Anthony Russo.

## ORDER

HUNT, District Judge.

Before the Court is **Defendants' Motion to Dismiss on Grounds of Sovereign Immunity** (# 21, filed March 28, 2000). Plaintiff filed Plaintiff's Opposition ... (# 24) on April 6, 2000. Defendants' Reply ... (# 27) was filed on April 18, 2000.

## INTRODUCTION

Plaintiff Peter Liriano was shot by Anthony Russo. In his complaint, Plaintiff alleges that Anthony Russo and his supervisor Jack Lazzorotto, employees of the Clark County School District, deprived him of his constitutional rights under the color of law. Accordingly, Plaintiff alleges that the shooting and the circumstances surrounding the shooting were violative of 42 U.S.C. § 1983.

Defendants argue that the Clark County School District and its employees are immune from suit in federal courts pursuant to the doctrine of sovereign immunity and the Eleventh Amendment. Defendants affirm that the Clark County School District is a political subdivision of the State of Nevada, that any money judgment against it or its employees would implicate State funds, and that, as a result, it is immune from suit. Plaintiff counters that Russo and Lazzorotto are not immune because the Eleventh Amendment does not bar claims brought against government officials in their individual capacity. Plaintiff also argues that the Clark County School district is not entitled to sovereign immunity because it is not an arm of the State of Nevada.

## DISCUSSION

■ The issue before the court is whether the Clark County School District is immune from suit in federal court based on the doctrine of sovereign immunity, and whether the individual defendants are derivatively also immune from suit. Interestingly, the Court found no published cases which specifically address how the doctrine of sovereign immunity is applied to the Clark County School District.

### I. The Clark County School District

The Eleventh Amendment states as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the Untied States by Citizens of another State or Subjects of any Foreign State.

U.S. CONST. amend. XI. The Eleventh Amendment is generally referred to as the doctrine of sovereign immunity and is traditionally understood as a bar prohibiting the commencement or prosecution of any suit in federal court against a State or State entity. *See, e.g., Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 2246–47, 144 L.Ed.2d 636 (1999) (explaining that although the phrase Eleventh Amendment immunity is "convenient shorthand," sovereign immunity is not derived from nor is limited by the Eleventh Amendment but is a "fundamental aspect of the sovereignty" enjoyed by the States prior to the ratification of the Constitution and which they enjoy today). Whether the Defendants in this case are immune turns on various factors. To paraphrase *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations. The issue here thus turns on whether the Clark County School Dis-

trict is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend. The answer depends, at least in part, upon the nature of the entity created by state law. *Mount Healthy,* 429 U.S. at 280, 97 S.Ct. 568. Following *Mount Healthy,* in *Regents of the University of California v. Doe,* 519 U.S. 425, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997), the Supreme Court stated,

> Ultimately, of course, the question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State, and therefore 'one of the United States' within the meaning of the Eleventh Amendment, is a question of federal law. But that federal question can be answered only after considering the provisions of state law that define the agency's character.

*Regents of the Univ. of Calif.,* 519 U.S. at 430 n. 5, 117 S.Ct. 900. After *Mount Healthy* and prior to *Regents of the University of California,* the Ninth Circuit indicated that courts in this circuit should weigh a number of factors or provisions of state law in analyzing the agency's character. The Court of Appeals stated, "Whether the school district is a state agency for purposes of the Eleventh Amendment turns on the application of the multi-factored balancing test summarized in *Mitchell v. Los Angeles Community College Dist.,* 861 F.2d 198, 201 (9th Cir. 1988), *cert. denied,* 490 U.S. 1081, 109 S.Ct. 2102, 104 L.Ed.2d 663 (1989)." *Belanger v. Madera Unified School Dist.,* 963 F.2d 248 (9th Cir.1992). The *Mitchell* test is as follows:

> To determine whether a governmental agency is an arm of the state, the following factors must be examined: [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity.

*Mitchell,* 861 F.2d at 201 (citing *Jackson v. Hayakawa,* 682 F.2d 1344, 1350 (9th Cir. 1982)). It therefore follows that this Court must examine these factors in light of how Nevada law treats the Clark County School District. *Belanger,* 963 F.2d at 251; *see also Mount Healthy,* 429 U.S. at 280, 97 S.Ct. 568.

## A. Application of the *Mitchell* Factors

### 1. Whether a money judgment would be satisfied out of state funds

■ "[T]he question whether a money judgment against a state instrumentality or official would be enforceable against the State is of considerable importance to any evaluation of the relationship between the State and the entity or individual being sued." *Regents of the University of California v. Doe,* 519 U.S. 425, 430, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) (citing *Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S. 30, 45–51, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994)); *see also Rutledge v. Arizona Bd. of Regents,* 660 F.2d 1345, 1349 (9th Cir.1981) (stating "Obviously the source from which the sums sought by the plaintiff must come is the most important single factor in determining whether the Eleventh Amendment bars federal jurisdiction."), *aff'd on other grounds sub nom. Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). Defendants offer sections 387.170 and 387.175 of the Nevada Revised Statutes in support of their contention that the State of Nevada would be legally obligated to pay a judgment against the Clark County School District. Section 387.170 states,

> 1. There is hereby created in each county treasury a fund to be designated as the county school district fund, except as otherwise provided in subsection 2.
> 2. All money received by the county treasurer under the provisions of NRS

387.175 may be transferred to a separate account established and administered by the board of trustees of the county school district under the provisions of NRS 354.603.

NEV. REV. STAT. ANN. § 387.170 (2000). Section 387.175 states:

"The county school district fund is composed of:

1. All local taxes for the maintenance and operation of public schools.

2. All money received from the Federal Government for the maintenance and operation of public schools.

3. Apportionments by this state as provided in NRS 387.124.

4. Any other receipts, including gifts, for the operation and maintenance of the public schools in the county school district.

NEV. REV. STAT. ANN. § 387.175 (2000). Contrary to the contention of the Defendants, however, sections 387.170 and 387.175 support the proposition that a judgment against Clark County would be paid from a county school district fund which is administered by county officials, not a state fund. Section 387.170 creates a fund in each county treasury, separate from state funds. Section 387.175 indicates that another county fund may be established to pool federal funds, local taxes, and other receipts, including gifts, in addition to state funds. In sum, the local control over school district funds persuades the Court that money to satisfy a

judgment would come from a county school district fund, not a state fund.

Defendants refer the Court to *Belanger* and reason, however, that because the state funds are commingled with the other sources of income, that a judgment would be paid from state funds. In *Belanger*, the Ninth Circuit determined that the California public school districts were controlled and funded by the state government, not by local districts. *Belanger*, 963 F.2d at 251. In making this determination, the circuit court determined that local revenue was commingled with state funds into a single fund under state control. *Id.* If funds were used to pay a judgment against a school district in California, money would be diverted out of the state fund. This would result in a lack of funding for educational purposes because state funds in the budget were required to be used to cover any critical educational expenses that the local funds would have covered absent the judgment. *Id.* Thus, any use of commingled funds was use of state funds. *Id.* The Nevada system is different. Revenue for Nevada school districts comes from various sources and is pooled in a fund in each county treasury, in county school district funds which are administered by county officials. NEV. REV. STAT. ANN. §§ 387.170, 387.175, 387.210 (2000). State funds do not cover critical educational expenses that local funds would cover absent a judgment in the same way California state funds are used.[1] In sum, this Court finds that a judgment against the school district would be satis-

---

1. Defendants offer as an example a situation in 1999 in which the White Pine County School District overspent its budget by 2.5 million dollars while building a high school. Defendants indicate that funds were loaned to the White Pine County School District from the State School Distributive Account because the annual repayment amounts would have reduced the amount of money available for educational purposes. As a result, the State Legislature repaid the loan through special legislation. (Defs.' Mot. to Dismiss (# 21) at 6, n. 2.) This example further persuades the Court that funding for education in Nevada differs from California. First, the school dis-

trict was loaned money to cover its obligations. Then, after it was noted that the district would suffer financial difficulties because of the debt, special legislation was required before state funds would be diverted to the school district to satisfy the debt incurred by the district. Money was not automatically diverted from state funds. Absent special legislation, the county was obligated to repay the debt and the loan it received from the state, indicating that a judgment against a Nevada school district would be satisfied from local funds controlled by county officials, not state funds managed by state officials as in *Belanger*.

fied from local county funds, not state funds.

## 2. Whether the Clark County School District performs central governmental functions

The Ninth Circuit advises that the Court must consider whether public schooling is a statewide or central government function. *See Mitchell*, 861 F.2d at 201; *Belanger*, 963 F.2d at 253. The Court acknowledges the following "declaration of Legislative intent" found in section 385.005: "The legislature reaffirms its intent that public education in the State of Nevada is essentially a matter for local control by local school districts. The provisions of this Title are intended to reserve to the boards of trustees of local school districts within this state such rights and powers as are necessary to maintain control of the education of the children within their respective districts." NEV. REV. STAT. ANN. § 385.005 (2000). In Nevada, public schooling is a matter for local control; it is not a statewide or central government function.

## 3. Whether the Clark County School District may sue or be sued

In Nevada, each school district, including the Clark County School District, may sue and be sued. NEV. REV. STAT. ANN. § 386.010(3) (2000) (stating "[e]ach school district shall have the power to sue and may be sued").

## 4. Whether the Clark County School District has the power to take property in its own name or only the name of the state

In Nevada, the board of trustees for each school district holds all school property as a corporation. NEV. REV. STAT. ANN. § 393.030 (2000). Plus each board manages and controls the property within its district. NEV. REV. STAT. ANN. § 393.010(1) (2000).

## 5. The corporate status of the Clark County School District

In *Belanger*, the circuit court declared that California school districts had the corporate status of agencies of the state charged with the administration and local operation of the state school system. *Belanger*, 963 F.2d at 254. In Nevada, while each county school district is designated as a political subdivision of the State, the state system of public education provides for county school districts and a locally elected board of trustees for each district. NEV. REV. STAT. ANN. § 386.010(2) (2000); *cf.* NEV. REV. STAT. ANN. §§ 386.010(1), 386.030, 386.110 (2000). That said, it also appears that the county school districts in Nevada are not merely agencies of the state. A local board of trustees for a school district may create and administer a program of school-based decision-making for public schools within the district, waive regulatory requirements (but not statutory requirements) regarding a public school which adopts a program of school-based decision-making, and waive a course of study otherwise statutorily required upon application by the board on behalf of the school council created by a school-based decision-making program. *See* NEV. REV. STAT. ANN. §§ 386.4154, 386.4156, 386.4158 (2000). Because the Court finds that the corporate status of the school district is a close question, this factor will be given less weight in the overall balance.

## B. Factors other than those in *Mitchell*

In *Mount Healthy*, as part of the balance which found the school district to be more like a county or city than an arm of the state, the Supreme Court determined that the "State" of Ohio did not include "political subdivisions" and that school districts in Ohio were political subdivisions. *Mount Healthy*, 429 U.S. at 280, 97 S.Ct. 568. In Nevada, each school district is a political subdivision of the State of Nevada. NEV. REV. STAT. ANN.

§ 386.010(2) (2000). The Nevada Legislature groups political subdivisions with the State in waiving its sovereign immunity and consenting to suit in state court. The "State" of Nevada waives its "immunity from liability and action of all political subdivisions of the state," and allows an action to be brought "against the State of Nevada or any political subdivision of the state" in the state courts of Nevada. NEV. REV. STAT. ANN. § 41.031(1) and (2) (2000). The State of Nevada expressly has not waived its Eleventh Amendment sovereign immunity. NEV. REV. STAT. ANN. § 41.031(4) (2000).

The *Mount Healthy* Court also considered the ability of the Ohio school boards to issue bonds and to levy taxes within certain restrictions of state law in determining that the school district was not entitled to assert Eleventh Amendment immunity. *Mount Healthy*, 429 U.S. at 280, 97 S.Ct. 568. Likewise, in Nevada school districts may issue bonds subject to certain restrictions, NEV. REV. STAT. ANN. § 387.335 (2000), and school district boards may also levy taxes. NEV. REV. STAT. ANN. §§ 387.3285, 387.3287, 387.331 (2000).

Finally, it is worth noting the obvious efforts of the Nevada Legislature to associate the school district with the respective counties. The boundaries of the school districts are conterminous with the boundaries of the counties of the state, and are continuously referred to as *county* school districts. *See, e.g.*, NEV. REV. STAT. ANN. §§ 386.010, 386.030, 386.110, 386.120 (2000).

On balance, the Clark County School District is more like a county than it is like an arm of the state. The Nevada Legislature does define the Clark County School District as a political subdivision in section 386.010(2), and the language in section 41.031 indicates an intent to waive immunity for political subdivisions in state court. However, the other factors weigh in favor of finding that the Clark County School District is more like a county than an arm of the state. The Court notes the following: money to satisfy a judgment would come from a county school district fund, not a state fund; the Nevada legislature's clearly expressed intent that public education in Nevada is essentially a matter for local control by local school districts; the fact that the Clark County School District may sue or be sued pursuant to Nevada statute; the fact that the district has the power to take property in its own name; its ability to issue bonds and to levy taxes within certain restrictions; and the Nevada legislature's association of the school districts with the counties of the state. For these reasons the Court finds that the Clark County School District is not an arm of the State of Nevada entitled to Eleventh Amendment sovereign immunity.

## II. Individual Defendants Anthony Russo and Jack Lazzorotto

■ Defendants argue that Plaintiff's complaint alleges that defendants Russo and Lazzorotto were acting within the scope of their employment, and that, as a result, they are immune from suit because they were acting in their official capacities. Plaintiff contends that the Defendants are named in their individual capacities and that the Eleventh Amendment does not bar claims against government officials in their individual capacity, citing, *inter alia*, *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).[2] The parties therefore contend that whether the Defendants are entitled to immunity depends on whether the Defendants are being sued in

**2.** When a plaintiff names a government official in his official capacity, the plaintiff is seeking to recover compensatory damages from the government body itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Naming a government official in his official capacity is the equivalent of naming the government entity itself as the defendant. *Id.* Naming a defendant in his individual capacity, on the other hand, seeks to impose personal liability upon a government official for actions he takes under color of state law. *Id.*

their official or individual capacities. Defendants' request that they be granted immunity will be denied for the reasons which follow.

First, Defendants contend that they have been named in their official capacities, and they are not entitled to sovereign immunity in their official capacities. The only immunities available to a defendant in an official capacity § 1983 action are those possessed by the governmental entity. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (citing *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Because the Court has determined that the Clark County School District is not entitled to Eleventh Amendment sovereign immunity, if the Defendants are being sued in their official capacities, they are not entitled to immunity. Assuming Defendants' contention to be true, that the individual Defendants are being sued in their official capacities, they are not entitled to immunity.

Second, Plaintiff asserts that the Defendants have been named in their individual capacities, and the complaint supports this contention. (Compl.(# 1), ¶ 7 and ¶ 8, alleging that Anthony Russo and Jack Lazzarotto were acting in their individual capacities). While Plaintiff also alleges that the Defendants were acting within the scope of their official duties, such an allegation is proper and should not necessarily be interpreted to mean that the Defendants are being sued in their official capacities. Indeed, § 1983 claims require plaintiffs to plead facts alleging that the defendants acted under color of state law. Defendant Russo was employed as a school police officer and Lazzorotto was employed as the Director of Security for the Clark County School District. Thus, allegations that they acted within the scope of their employment can reasonably be interpreted to imply an allegation that they were acting under color of state law, not an allegation that they are being sued in their official capacities.

Consequently, because individuals who are named in their individual capacities are, under certain circumstances, entitled to qualified immunity, *see Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and because the parties have not addressed this issue, the Court will deny the individual Defendant's request for immunity without prejudice.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss on Grounds of Sovereign Immunity (# 21) is **denied.**