**KENAI PENINSULA BOROUGH and the Home Insurance Company, Appellants,**

v.

**STATE of Alaska, Appellee.**

**No. 2092.**

Supreme Court of Alaska.

March 12, 1975.

---

**2.** 414 U.S. at 146, 94 S.Ct. at 400, 38 L.Ed.2d at 373.

**3.** 521 P.2d 486, 491 (Alaska 1974).

**4.** 457 P.2d 622, 632 (Alaska 1967).

**5.** The instruction is required by Alaska R. Crim.P. 30(b)(2).

Kenneth P. Jacobus, Anchorage, for appellants.

Sanford Gibbs, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

BOOCHEVER, Justice.

The seldom litigated question of when a political subdivision acts as an agent of the state so as to render the state liable for the acts of the subdivision is presented by this appeal.

On January 15, 1969, James Harman was injured and his wife was killed as the result of a collision with a school bus owned by Burton Carver and driven by Darrell Houston. Mr. Harman, individually and as administrator of the estate of his deceased wife, brought suit against the Kenai Peninsula Borough alleging that the bus driver was acting as agent of the borough at the time of the accident. The borough, in turn, tendered defense of the suit to the State of Alaska contending that in furnishing transportation for school pupils, the borough was acting as an agent of the state. The tender was refused. The borough then filed a complaint against the state seeking a declaratory judgment that the state must indemnify the borough for reasonable settlements, judgments, costs and attorney's fees resulting from the Harman suit.

The Harman case was settled for the sum of $125,000, and the Home Insurance Company, as insurer of the borough, contributed $50,000 to that settlement. The Home Insurance Company was then added as a party plaintiff in the declaratory judgment complaint.

In its answer, the state denied that the borough was its agent and raised other defenses. The agency issue, alone, was tried

by the court, with the other issues being severed for subsequent disposition. The superior court rendered a judgment in favor of the state, and the borough has appealed.

Therefore, we are confronted with the single issue as to whether the trial court was correct in ruling that the borough was not an agent of the state in furnishing school transportation.[1]

The Alaska Constitution provides that "[t]he legislature shall by general law establish and maintain a system of public schools open to all children of the State."[2] The legislature has specified that "[e]ach borough constitutes a borough school district and establishes, maintains, and operates a system of public schools on an area-wide basis . . . ."[3] The borough admits that in the general operation of the school system, it is exercising a delegated authority from the legislature, so that in the absence of facts not here involved, the state would not incur liability for personal injuries. With reference to the transportation function, however, it is the borough's contention that it was acting as a compelled agent of the state so as to entitle the borough to indemnity for any liability incurred.[4]

The borough bases this argument on AS 14.09.010, which provides in relevant part:

(a) The [D]epartment [of Education] may provide for the transportation of pupils who reside a distance from established schools, and in order to accomplish that purpose may

(1) require school districts to enter into contracts with the department for the administration, supervision, operation or subcontracting of the operation of transportation systems for students to and from the schools within their service area;

. . . . . .

(3) permit school districts to (A) establish supplementary systems of student transportation for students ineligible to utilize transportation facilities paid for by the state, (B) charge fares or fees for the supplementary transportation systems, and (C) use local tax funds to pay, in whole or in part, the cost of the supplementary system.

Relying on this statute, the borough rests its appeal on an attempt to draw a distinction between the delegation of the legislative function of furnishing school transportation and the creation of a relationship whereby the borough acts on behalf of the state as its agent in furnishing the service. The use of the words "may provide" is said to indicate that the transportation power is in the state, and the words "may require" are claimed to show that the state can compel the local school districts to act as state agents in exercising the pupil transportation function. However, admitting that the transportation power is in the state and that the state has compelled the school district to handle that function is not tantamount to agreeing that the district is acting as the state's agent in providing school transportation so as to impose liability on the state.

It is thus on the slippery distinction between a power delegated to a political subdivision and an agency relationship that the case turns. The borough points to the case of Pantess v. Saratoga Springs Authority[5] which discusses aspects of the distinction as follows:

Where the State assumes to act directly in the carrying out of its governmen-

---

1. In light of our ruling here, the other issues pertaining to the right to indemnity no longer require trial.

2. Alaska Const. art. VII, § 1.

3. AS 29.33.050.

4. In so arguing, the borough relies on Restatement (Second) of Agency § 224 (1957) which provides:
 One compelled by law or duress to render services to another has power to subject the other to liability as if there were a master and servant relation.

5. 225 App.Div. 426, 8 N.Y.S.2d 103, 105 (1938).

tal function, even though it create and use a corporation for that purpose, it assumes responsibility for the conduct of its agent. Thus the State may choose to create and maintain a state system of parks, and thereby subject itself to liability for the negligence of its officers and employees (Court of Claims Act, § 12–a; Maltby v. County of Westchester, 267 N.Y. 375, 379, 196 N.E. 295); or, with like liability, it may provide for the imprisonment of young delinquents, and commit their custody to an authorized institution for the purpose. Paige v. State of New York, 269 N.Y. 352, 199 N.E. 617. But when the State delegates the governmental power for the performance of a state function, the agency exercises its independent authority as delegated, as does a city, and its responsibility for its acts must be determined by the general law which has to do with that class of agent and corporate activity, apart from liability on the part of the State. That is the case when the State delegates its state function of education to a school board, its public health function to a local board of health, when it delegates broader governmental functions to a county, city or village. In such instances, there is no authority for making claim against the State, but the agency exercising the delegated authority must respond for its own actionable conduct.

In *Pantess,* the Saratoga Springs Authority was established as a public corporation to develop the "Saratoga Cure" from the spring's water. Such development was expressly declared to be a part of the over-all public health policy of the state. However, the court held that, even though the Authority was an agency exercising governmental powers, "the performance of its functions [was] not so closely allied or held in such intimate relation to the health activities carried on by the State itself . . . ." as to make it an agent of the state and thereby impose liability on the state to one scalded in taking the cure.[6]

The *Pantess* case, however, deals only with the results flowing from a determination of an agency relationship or a delegated function, not the distinction between them. We find great difficulty with elucidation of the distinction between a function delegated to a political subdivision so as to insulate the state from liability and the exercising of a function by a political subdivision as a part of the state. The basis of action by any agent is the authority delegated by his principal,[7] so that a delegation is involved in both relationships. The distinction would appear to be one of degree of control. If a political subdivision acts with a substantial degree of independence under authority delegated by the state, liability may not be imposed on the state as a result of such activity. If, on the other hand, an executive department specifically makes a political subdivision its agent to act on its behalf and subject to its control, it may be subjected to liability based on acts of the political subdivision.

Our examination of the sparse authority on this subject indicates that authorized

---

6. 8 N.Y.S.2d at 106. Significantly, the court relied on an analogy to the state school system, stating:

> These arguments are true in one degree or another, or in one manner or another, in the public school system of the State. The State determines the qualifications of teachers, and provides for their retirement in part with its own money, and even contributes to their salaries and the maintenance of the schools, and school property is commonly held by or reverts to the municipality within which the school is located. None of these considerations have been regarded by the courts as a basis

of liability on the part of the State for the conduct of boards of education.

7. Restatement (Second) of Agency § 1 (1957) defines "agency" as:

> (1) Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

The manifestation of consent by one person to another to act on his behalf is a delegation of authority. "Delegation" is defined in Webster's Seventh New Collegiate Dictionary (1971) as "the act of empowering to act for another".

activities of such subdivisions as municipalities and school districts are almost universally considered to be independent actions not subjecting the state to liability,[8] whereas when a state functions through use of some other type of agency or a private corporation, liability is more likely to ensue.[9] Thus, in imposing liability on the state for injuries to a juvenile placed in a private correctional institution, the New York Court of Appeals pointed out:

> The quasi penal institution in which the claimant was confined was a governmental agency to which the state had committed in part its function to care for wayward minors. But the institution did not thereby acquire a status equivalent to that of the civil divisions of the state.[10]

We have had no case cited to us where liability was imposed upon the state for actions of a political subdivision such as a municipality or a school district.[11] Political subdivisions of a state are creatures of the legislature which prescribes and curtails their authority. They may be subjected to detailed requirements in the exercise of their statutory functions. Yet such legislative regulation has not been held to make the subdivision an agent of the state so as to impose liability. Nevertheless, we can envision situations which might arise where it is clear that the subdivision is acting on behalf of the state as its agent and under its control to such an extent as to impose liability. Where political subdivisions are involved, however, we shall apply a much stricter test than when other forms of entities are utilized as to the type of control required to create liability on the part of the state.[12] To apply such a test, we shall now review the factual context which confronts us in this appeal.

Under the authority of AS 14.09.010,[13] the Alaska Department of Education entered into a contract with the Kenai Peninsula Borough School District (referred to hereinafter as the borough) whereby the borough was to furnish or contract for the transportation of pupils living 1½ miles or more from the school, and the state was to pay a specified amount for each day transportation was furnished. In addition, the state agreed to pay two (2) percent of that amount to the borough as an administrative charge. The borough was authorized to furnish transportation to students living closer to the school provided that it paid the costs for such transportation without the right to state reimbursement. Any contracts entered into by the borough for school transportation were required to be

8. Gonzales v. State, 29 Cal.App.3d 585, 105 Cal.Rptr. 804 (1972) ; Pantess v. Saratoga Springs Authority, 225 App.Div. 426, 8 N.Y.S.2d 103, 105–06 (1938) ; see D. R. Smalley & Sons, Inc. v. United States, 372 F.2d 505, 178 Ct.Cl. 593 (1967), and Eden Memorial Park Assoc. v. United States, 300 F.2d 432 (9th Cir. 1962), which hold that a state is not an agent of the United States in performing functions under the Federal-Aid Highways Act, 23 U.S.C. § 101 et seq. (1958).

9. See Paige v. State, 269 N.Y. 352, 199 N.E. 617 (1936) (state use of a private institution as a reformatory). See generally State v. Abbott, 498 P.2d 712 (Alaska 1972) ; Johnson v. State, 69 Cal.2d 782, 447 P.2d 352 (1968).

10. Paige v. State, 269 N.Y. 352, 199 N.E. 617, 618 (1936) (citations omitted).

11. The borough cites Maltby v. Westchester County, 267 N.Y. 375, 196 N.E. 295 (1935), but in that case, the question was whether the Westchester County Park Commission was acting as an agent of the state or the county in entering into road contracts. It was not a case of the county itself acting on behalf of the state.

12. We do not consider applicable here the "enterprise" theory espoused in Fruit v. Schreiner, 502 P.2d 133, 141 (Alaska 1972) whereby losses to third persons incidental to carrying on an enterprise were held to be a cost of operation and to be borne by the enterprise, with the burden distributed among those benefited by the enterprise. Such a theory could apply with equal force to the borough and the state. Nor do we find pertinent the "relative nature of the work" test utilized in determining whether an injured workman was an independent contractor or an employee in the private industry context of Ostrem v. Alaska Workmen's Compensation Board, 511 P.2d 1061 (Alaska 1973).

13. Quoted in relevant part at page 4, *supra.*

approved by the Commissioner of Education as a condition for payment by the state, and subcontracts had to provide that the contractors furnish a complete accounting to the state on forms provided by it of all funds received by the contractor for any service. The borough agreed to furnish the state with such information as route maps, bus time and mileage schedules, driver, vehicle and pupil data, etc. as requested. The borough was to administer and supervise the transportation in accordance with the rules and regulations of the Alaska Department of Education.

In accordance with that contract, the borough entered into an agreement with Burton Carver to furnish transportation services for specified routes. The contract was executed on a form provided by the state, entitled Transportation Sub-Contract Form. The agreement was signed by Carver and by the President of the School Board indicating the approval of the board. At no place in the contract is there an indication that the borough was acting on behalf of the state as its agent, although there is provision for amendment by either the borough or the state Commissioner of Education "if in their judgment a reduction in required transportation services or lack of adequate transportation funds so requires". Liability insurance policies secured by the company were required to be filed with the state as a condition for payment of state monies. The transportation regulations of the Department of Education were made a part of the contract.

The principal, superintendent or teacher in charge of the school unit for which transportation service was provided was designated as the agent of the borough (not the state) for determining arrival or departure time of vehicles, general bus schedules and routing and giving general supervision to the conduct of the transportation operation. The borough had an employee designated as director of transportation who was to take care of the school district transportation and refer to the state Department of Education only matters requiring interpretation as to what was fundable. The state had nothing to do with the establishment of the bus routes and the times for student pickup. It merely reviewed the designated routes to assure that there was no duplicated mileage. The borough could provide for extended routes at its own expense. The school board would determine which of the proposals submitted for transportation services would be selected and would submit its recommendation to the state's Department for concurrence or rejection. Moreover, the borough had the option of furnishing the transportation by means of its own drivers and vehicles or entering into contracts for that purpose.

We conclude that, while the state did supervise the transportation service insofar as it related to the funding provided by it and also had certain regulations in effect pertaining to the over-all safety of the transportation system,[14] the actual control of the transportation services was undertaken by the borough which, on its own behalf, entered into the contract with Carver.

The situation is closely akin to that existing on the federal-state level discussed in D. R. Smalley & Sons, Inc. v. United States.[15] The court in *Smalley* dealt with a suit by a contractor employed by the State of Ohio to work on highway construction projects as part of the Federal-Aid Highway System of interstate highways. For these projects, the United States would reimburse the State of Ohio to the extent of ninety (90) percent of the total cost of the project. The plaintiff's claim was based on the state's wrongful acts and omissions as a result of which the completion of the projects became consid-

14. 4 A.A.C. ch. 1, subch. 10 §§ 100–04 (Register 24, July 1967).

15. 372 F.2d 505, 178 Ct.Cl. 593 (1967), cert. denied, 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967).

erably more expensive than originally anticipated. In seeking recovery from the United States, the plaintiff asserted that with regard to these projects, the State of Ohio was the agent of the United States.

To support this claim, plaintiff points out that: the contracts were drafted pursuant to the regulations and requirements of defendant; the contracts were approved by defendant; the work was inspected and approved by defendant as it progressed; changes in plans were approved by defendant; the final completion of the work was inspected and approved by the defendant; and defendant agreed by the provisions of the law to pay the state (for the benefit of plaintiff) ninety per cent of the cost of the contracts.[16]

In language which applies with equal effect to the relationship between a state and its various political subdivisions, the court stated:

The National Government makes many hundreds of grants each year to the various states, to municipalities, to schools and colleges and to other public organizations and agencies for many kinds of public works, including roads and highways. It requires the projects to be completed in accordance with certain standards before the proceeds of the grant will be paid. Otherwise the will of Congress would be thwarted and taxpayers' money would be wasted. These grants are in reality gifts or gratuities. It would be farfetched indeed to impose liability on the Government for the acts and omissions of the parties who contract to build the projects, simply because it requires the work to meet certain standards and upon approval thereof reimburses the public agency for a part of the costs.[17]

The court rejected the agency argument citing Eden Memorial Park Assoc. v. United States,[18] wherein the court stated:

Moreover, analysis of the Federal-Aid Highways Act indicates that while close cooperation between the United States and the individual states was contemplated, the states or their agencies or officials were in no sense to become agents of the United States in projects authorized by that act.

The borough attempts to distinguish *Smalley* on the basis that the states may elect whether to construct highways under the Federal-Aid Highway Act whereas the borough was compelled to provide school transportation once the state Board of Education decided to require it. It contends that the involuntary nature of its undertaking of the function makes it a compelled agent of the state.

■ We agree that one may become a compelled agent or servant of another. As noted previously, Section 224 of the Restatement (Second) of Agency (1957) states that "[o]ne compelled by law or duress to render services to another has power to subject the other to liability as if there were a master and servant relation". Similarly, one who volunteers services may be a servant of the one accepting services.[19] Whether one is a compelled or voluntary agent begs the question here involved, i. e., was the borough acting as an agent of the state in furnishing school transportation. It is not contended that the borough is an agent of the state in exercising the function of public education, yet it is compelled by law to maintain and operate a system of public schools on an areawide basis.[20]

We conclude that the borough was not acting as an agent of the state in furnishing transportation of pupils. Our conclusion is bolstered by the only case to rule

16. 372 F.2d at 507.

17. *Id.* (citations omitted).

18. 300 F.2d 432, 439 (9th Cir. 1962).

19. Restatement (Second) of Agency § 225 (1957).

20. AS 29.33.050. Macauley v. Hildebrand, 491 P.2d 120, 122 (Alaska 1971).

squarely on the relationship between a school district furnishing such transportation and a state. In Gonzales v. State,[21] the plaintiff brought suit against a school bus driver, the school district, the county and the State of California and other defendants for injuries suffered when the plaintiff was struck by a school bus. In seeking recovery against the state, the plaintiff contended that the school district was the agent of the state in employing the driver so as to make the driver an employee of the state. A California statute imposed liability only on the public entity whose employee caused the injury.

Thus, as in the Kenai case, for the state to be liable, the school district had to be found to be the state's agent. The court held:

. . . Grace Erickson, at the times mentioned in the complaint and for the previous 19 years, was employed by the District as a bus driver; she was not employed by the State and did not drive or operate a bus owned or controlled by the State, at any time; . . . ..

. . . . . .

State agencies, even though exercising a portion of the state's powers of government, are not the state or a part of the state; and may not act on behalf of the state unless authorized to do so by statute. . . . There is no statute conferring authority upon school boards, expressly or by implication, to employ an individual on behalf of the state.

The fact the authority of a school district to operate buses, and the incidental authority to employ bus drivers, is derived from the State through its Legisla-

ture, does not support the conclusion a bus driver employed by the District is an employee of the State.[22]

Similarly, there is no Alaska statute or contract authorizing the borough to employ or contract with a driver *on behalf of the state*. The bus was not owned by the state, and Carver entered into the contract with the borough school district, not the state.[23]

 The borough makes an additional argument to the effect that a change in the Department of Education regulations made subsequent to the Harman accident indicates that under the former regulations, the borough acted as agent. The regulations in effect in 1969 provided in part that the "Commissioner of Education *shall* direct the school boards to enter into contracts for transportation of pupils who reside a distance of 1½ miles or more from the school,"[24] whereas the current regulation specifies that the Commissioner "*may* in his discretion" establish contracts with districts to provide for transportation of students.[25] The borough contends that this indicates that the state has elected to no longer "require" the borough to provide for the transportation. But the fact that it is discretionary with the Commissioner whether to enter into the contract, does not make it less a requirement on the part of the borough when such discretion is exercised. Moreover, as we have discussed previously, the real issue is not whether the borough was "required" to furnish the transportation, but whether it acted as agent for the state in either a compelled or voluntary capacity.

---

21. 29 Cal.App.3d 585, 105 Cal.Rptr. 804 (1972).

22. *Id.* at 805, 807 (footnote omitted, citations omitted).

23. The *Gonzales* case was simplified by an uncontradicted declaration in support of the state's motion for summary judgment that the school district owned, operated and controlled the buses used to transport its stu-

dents, and the state did not own, operate or control any of the buses at any time. 29 Cal.App.3d 585, 105 Cal.Rptr. at 806. We have discussed *supra* the more difficult question of control involved in the instant case.

24. 4 A.A.C. ch. 1, subch. 10 § 100 (Register 14, February 1964).

25. 4 A.A.C. 27.050 (Register 38, July 1971).

We conclude that the superior court was correct in granting summary judgment for the state holding that the borough was not acting as an agent of the state in furnishing school transportation.

Affirmed.