**Susan HOLZ, Plaintiff–Appellant,**

**v.**

**NENANA CITY PUBLIC SCHOOL DIS-TRICT; Terry Bentley; Joanne Rome-ro; Endil Moore, Defendants–Appel-lees.**

No. 02–35179.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 11, 2003.

Filed Oct. 30, 2003.

Michael J. Walleri, Law Offices of Michael J. Walleri, Fairbanks, AK, for the plaintiff-appellant.

Howard S. Trickey, Jermain, Dunnagan & Owens, P.C., Anchorage, AK, for the defendants-appellees.

Before PREGERSON, CANBY, and McKEOWN, Circuit Judges.

PREGERSON, Circuit Judge.

Plaintiff/Appellant Susan Holz, an Alaskan Native, filed suit against Defendants/Appellees Nenana City Public School District ("School District") and School District officials. Holz alleged that the defendants violated federal and state civil rights laws by failing to hire her for various positions with the School District. The district court concluded that the School District is an "arm of the state" and thereby immune from suit under the Eleventh Amendment. The district court granted summary judgment in favor of the defendants. Holz now appeals the district court's ruling. Holz contends that the School District is *not* an "arm of the state" entitled to Eleventh Amendment immunity. Holz argues that the School District is *not* a state agency, but rather is akin to a local or county agency, most importantly because Alaska is not legally required to satisfy any possible judgment against the

School District. And thus Holz argues the district court erred in its ruling. We agree and reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1998, Holz, an Alaskan Native and life-long resident of Nenana, applied for a classroom aide position at the Nenana City Public School. The position was partly funded by an Indian Education grant that included an Indian employment preference requirement. William Black, the classroom teacher, believed that Holz was the best qualified applicant. But the classroom aide position went to Debbie Moore, the wife of the School Board President and a non-Native. When Black asked the school principal Joanne Romero why she recommended Moore for the job, and not Holz, the principal responded that Holz "did not interview very well."

On August 4, 2000, Holz filed an action in the United States District Court for the District of Alaska against the School District and School District officials. Holz alleges that the defendants violated the federal Indian Self Determination and Education Assistance Act[1] and federal and state civil rights laws[2] by failing to hire her for several positions with the school district.[3]

On October 29, 2001, the district court granted the School District's motion for summary judgment. Applying the five factor test articulated by this court in *Mitchell v. Los Angeles Community College District,* 861 F.2d 198, 201(9th Cir. 1988), the district court held that the School District is an arm of the state and thus immune from suit under the Eleventh

---

1. 25 U.S.C. § 450e.

2. 42 U.S.C. §§ 1983, 2000d, 2000e–2; Alaska Stat. § 18.80.220, Alaska Stat. § 14.18.100.

3. In addition to the position as a classroom aide, Holz also applied for positions with the School District as a correspondence aide and Accountant Payroll Manager.

Amendment. The district court noted that the United States District Court for the District of Alaska previously applied the *Mitchell* factors in *Straabe v. Yupiit School District,* 1999 WL 33456490 (D.Alaska 1999). In *Straabe,* the court found that a regional education attendance area ("REAA") is an arm of the state. *Straabe,* 1999 WL 33456490, at *4. While the district court recognized that *Straabe* was not binding precedent, it was "nonetheless ... convinced by [its reasoning]"—even though there are substantial differences between a REAA, a school district that exists outside an organized borough or city, and a school district associated with a city, such as Nenana. The district court determined that the "distinction [between a REAA and a city school district] does not change the result in the final analysis," and thus "[l]ike REAAs, Nenana is an arm of the state and immune from suit under the Eleventh Amendment."

The district court found that the first of the *Mitchell* factors—whether a money judgment would be satisfied out of state funds—pointed in favor of finding that the School District was an arm of the state. In 2001, the state provided approximately ninety-eight percent of the School District's operating budget. The court noted that, unlike REAAs, the School District is "associated with a city that has the power to tax and raise bonds enabling the city to make a local contribution." And the court further noted that in *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the "Supreme Court found that the power to issue bonds and levy taxes made a school district less like an arm of the state for purposes of Eleventh Amendment analysis." But given the scant local contribution, the district court concluded that any "judgment against Nenana will impact the state treasury." The district court rejected Holz's argument that because the state was not liable for a

judgment against the School District there would be no impact on the state treasury. *But see Kenai Peninsula Borough v. State,* 532 P.2d 1019 (Alaska 1975) (finding that state is not liable for a school district because the school district is not an agent of the state). Citing *Belanger v. Madera Unified School District,* 963 F.2d 248, 250–51 (9th Cir.1992), the district court declared that "[n]either liability [n]or agency are determinative factors in the Eleventh Amendment analysis."

Regarding the second *Mitchell* factor—whether the entity performs central governmental functions—the district court held that "[b]ased on Alaska state law it is clear that education is an essential state function." The Alaska Constitution provides that "[t]he legislature shall by general law establish and maintain a system of public schools open to all children of the State." Alaska Const. art. VII, § 1. In determining that education was a central governmental function, the district court, like the court in *Straabe,* relied heavily upon the Alaska Supreme Court's statement that:

> This constitutional mandate for pervasive state authority in the field of education could not be more clear. First, the language is mandatory, not permissive. Second, the section not only requires that the legislature 'establish' a school system, but also gives to that body the continuing obligation to 'maintain' the system. Finally, the provision is unqualified; no other unit of government shares responsibility or authority. That the legislature has seen fit to delegate certain educational functions to local school boards in order that Alaska schools might be adapted to meet the varying conditions of different localities does not diminish this constitutionally mandated state control over education.

*Macauley v. Hildebrand,* 491 P.2d 120, 122 (Alaska 1971) (footnote omitted).

The district court further held that "[i]t is undisputed that the last three factors— whether the entity may sue or be sued; whether the entity has the power to take property in its own name or only [in] the name of the state; and the corporate status of the entity—weigh against finding that Nenana is an arm of the state." The court, however, concluded that the School District is an arm of the state entitled to Eleventh Amendment immunity because "approximately 98% of[ ] Nenana's $6 million operating budget is funded by the state, the impact of a judgment against 'Nenana to the Alaska state treasury is certain,' and 'Nenana carries out an essential state function.' "

On October 30, 2001, the district court filed its order granting summary judgment in favor of the School District. The order, however, made no mention of the Alaska Supreme Court's decision in *Municipality of Anchorage v. Repasky*, 34 P.3d 302 (Alaska 2001), issued four days earlier on October 26, 2001. The *Repasky* case concerned, in part, the relationship between a school district and the municipality in which it is located. *See id.*

On December 4, 2001, the district court ordered the parties to file supplemental briefing on whether the Alaska Supreme Court's decision in *Repasky* should have affected the district court's ruling that the School District was an arm of the state entitled to Eleventh Amendment immunity.

The parties submitted supplemental briefing, and on January 16, 2002, the district court issued an order concluding that the Alaska Supreme Court's decision in *Repasky* did not require the district court to alter its holding that the School District was immune to suit under the Eleventh Amendment. The court stated that its holding was premised on its findings that education is an essential function of the

state and that the satisfaction of a judgment against Nenana would impact the state treasury: "The decision in *Repasky* d[id] not effect [sic] th[o]se findings." The court stated, however, that "[i]t is worth noting that after *Repasky*, it is a closer question whether a school district associated with a municipality (which does not enjoy Eleventh Amendment immunity) is distinct from the municipality for purposes of Eleventh Amendment immunity." Nonetheless, the court concluded that:

> The [*Mitchell* test,] however, is not affected. Education is an essential state function in Alaska and the negligible amount of local contribution from Nenana does not defray the impact to the state treasury a judgment against Nenana would have. For these reasons, the [summary judgment] order ... will remained unchanged.

*See Mitchell,* 861 F.2d at 201. The district court then entered final judgment in the case and granted summary judgment in favor of the School District and School District officials.

Holz now appeals the district court's final judgment.

## II. STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment. *See Clicks Billiards, Inc. v. Sixshooters, Inc.,* 251 F.3d 1252, 1257 (9th Cir.2001). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Delta Sav. Bank v. United States,* 265 F.3d 1017, 1021 (9th Cir.2001), *cert. denied,* 534 U.S. 1082, 122 S.Ct. 816, 151 L.Ed.2d 700 (2002). We review *de novo* whether a party is immune from suit under the Eleventh Amendment. *Eason v. Clark County Sch. Dist.,* 303 F.3d 1137, 1140 (9th Cir.2002), *cert. de-*

*nied,* 537 U.S. 1190, 123 S.Ct. 1262, 154 L.Ed.2d 1023 (2003).

## III. DISCUSSION

■ The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Immunity from suit under the Eleventh Amendment further extends to suits by citizens against their own state and "certain actions against state agencies and state instrumentalities." *Eason,* 303 F.3d at 1140 (quoting *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)); *see Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency,* 440 U.S. 391, 400–01, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) ("[S]ome agencies exercising state power have been permitted to invoke the [Eleventh] Amendment in order to protect the state treasury from liability ....."). But protection from suit under the Eleventh Amendment "does not extend to counties and municipal corporations." *Eason,* 303 F.3d at 1141; *see Lake Country Estates,* 440 U.S. at 401, 99 S.Ct.

1171("[T]he Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.' ").

■ The issue before us is "whether the [School District] is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." [4] *Mt. Healthy City Sch. Dist.,* 429 U.S. at 280, 97 S.Ct. 568(holding that an Ohio school district is more like a county or city than it is like an arm of the state and therefore it is not entitled to assert Eleventh Amendment immunity from suit). To determine whether an entity is an arm of the state we must apply the five factors listed in *Mitchell:* (1) "whether a money judgment would be satisfied out of state funds," (2) "whether the entity performs central governmental functions," (3) "whether the entity may sue or be sued," (4) "whether the entity has the power to take property in its own name or only the name of the state," and (5) "the corporate status of the entity." *Eason,* 303 F.3d at 1141 (quoting *Mitchell,* 861 F.2d at 201).[5]

**4.** In *Eason,* we noted that the "Supreme Court has mentioned in passing that the Eleventh Amendment does not afford 'local school boards' immunity from suit." 303 F.3d at 1141(citing *Missouri v. Jenkins,* 495 U.S. 33 n. 20, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990)). We further noted that most courts have held that school districts are not entitled to Eleventh Amendment immunity. *See id.* at n. 2.

**5.** Holz contends that because under Alaska law the School District is part of the home rule city of Nenana, this court does not need to address the *Mitchell* factors. Rather, according to Holz, we can simply conclude that because the Eleventh Amendment does not bar suits against municipal corporations, and under Alaska law the school district is part of

the Municipality of Nenana, Eleventh Amendment immunity does not apply.

As stated above, the district court noted that after the Alaska Supreme Court's decision in *Repasky,* "it is a closer question whether a school district associated with a municipality (which does not enjoy Eleventh Amendment immunity) is distinct from the municipality for purposes of Eleventh Amendment immunity." Alaska law provides that "[a] home rule or first class city outside a borough [like Nenana] is a city school district." Alaska Stat. § 29.35.260(b); *see also* Alaska Stat. § 14.12.010(1) ("each home rule and first class city in the unorganized borough is a city school district"). In *Repasky,* the Alaska Supreme Court stated that the Anchorage school district was "geographically

These factors must be analyzed "in light of the way [Alaska] law treats the governmental agency." *Belanger,* 963 F.2d at 251; *see also Regents of the Univ. of Cal.,* 519 U.S. at 429 n. 5, 117 S.Ct. 900 (whether an entity is an arm of the state "can be answered only after considering the provisions of state law that define the agency's character").

■ In applying the *Mitchell* factors, we are guided by our decision in *Belanger,* holding that school districts in California are arms of the state, and by our recent decision in *Eason,* holding that school districts in Nevada are *not* arms of the state.[6] The School District argues that Alaska's

public education system is "far more like California's than it is like Nevada's, and that *Belanger,* not *Eason,* is the case that controls." Holz asserts, however, that *Eason* controls this dispute because Alaska, like Nevada, "does not share the unique structure of the California school system." *Eason,* 303 F.3d at 1142.[7] In applying the *Mitchell* factors, we conclude that the School District more closely resembles the Nevada school system than the unique California school system and that the School District is not an arm of the state. Accordingly, we hold that the School District, like the school district in *Eason,* is not immune from suit under the Eleventh Amendment.

coextensive with the Municipality of Anchorage" and that the Anchorage school board was " 'part of the municipality,' even though 'it is a legislative body with legal responsibilities which in important respects are distinct from those exercised by the [municipal] assembly.' " 34 P.3d at 306 (internal quotations omitted).

Given the reliance we have placed upon the *Mitchell* factors in determining whether an entity is entitled to Eleventh Amendment immunity, we decline Holz's invitation to forgo applying the *Mitchell* factors, even if the School District is part of the municipality. Instead, we conclude that whether the School District is part of the municipality should be examined within the scope of the relevant *Mitchell* factors.

6. *Eason* was filed on September 11, 2002, about a year after the district court's ruling that the School District was an arm of the state, immune from suit. In a more recent decision, *Savage v. Glendale Union High Sch.,* 343 F.3d 1036 (9th Cir.2003), we held that an Arizona high school district is not an arm of the state entitled to Eleventh Amendment immunity.

7. Holz also argues that *Eason* implicitly overruled *Belanger.* This is incorrect. *Eason* explicitly distinguished the "unique structure of the California school system" in *Belanger*

from the Nevada school system and did not overrule *Belanger. Eason,* 303 F.3d at 1142. However, quoting the Supreme Court's decision in *Regents of the University of California,* decided five years after *Belanger,* the *Eason* court clarified that the first *Mitchell* factor focuses on potential legal liability. *Id.* In *Regents of the University of California,* the Supreme Court unanimously "agree[d] with the dissenting judge ... that with respect to the underlying Eleventh Amendment question, it is the entity's potential *legal liability* ... that is relevant." 519 U.S. at 431, 117 S.Ct. 900 (emphasis added). The Court quoted with approval the dissenting judge's statement that in determining if an entity is immune from suit under the Eleventh Amendment,[t]he question is not who pays in the end; it is who is legally obligated to pay the judgment that is being sought. *Id.* at 428, 117 S.Ct. 900(quoting *Doe v. Lawrence Livermore Nat'l Lab.,* 65 F.3d 771, 777–78 (9th Cir.1995) (Canby, J., dissenting), *rev'd,* 519 U.S. 425, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)); *see Duke v. Grady Municipal Schools,* 127 F.3d 972, 981 (10th Cir.1997) ("We interpret *[Regents of the University of California v.] Doe* to require us to focus on *legal liability* for a judgment, rather than *practical,* or indirect, impact a judgment would have on a state's treasury.") (emphases added).

A. Application of the *Mitchell* Factors

1. Whether a money judgment will be satisfied out of state funds

The first factor is the most important of the five *Mitchell* factors in determining whether an entity is an arm of the state and thus qualifies for Eleventh Amendment immunity. *Eason,* 303 F.3d at 1141. Contrary to the district court's summary judgment order, however, this first factor does not focus on whether a possible judgment against the entity would "impact the state treasury." Rather, "the relevant inquiry is whether [Alaska] will be *legally required* to satisfy any monetary judgment obtained against the [School] District." *Id.* at 1142 (emphasis added); *see also Regents of the Univ. of Cal.,* 519 U.S. at 431, 117 S.Ct. 900("[I]t is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or discharge the liability in the first instance, that is relevant."); *Durning v. Citibank, N.A.,* 950 F.2d 1419, 1424 n. 2 (9th Cir.1991) ("The relevant question is whether the state would have a *legal liability* to pay the judgment, not whether the defendant entity would have the *practical ability* to pay it."); *Hyland v. Wonder,* 117 F.3d 405, 414 (9th Cir.1997) (finding that the district court erred in concluding that defendants were immune from suit under the Eleventh Amendment when defendants did not present "any evidence that the state would be liable for the judgment").

No statutory provision requires Alaska to satisfy the School District's debts. Rather, an Alaska statute explicitly provides that "[t]he state is not responsible for the debts of a school district." Alaska Stat. § 14.17.900(a). We have previously concluded "[w]hen a state entity is structured so that its obligations are its own special obligations and not general obligations of the state, that fact weighs against a finding of sovereign immunity under the arm of the state doctrine." *Durning,* 950 F.2d at 1425–26. Furthermore, the Alaska Supreme Court has held that a school district was not an agent of the state, and thus, the state was not liable for a judgment against the school district, even though the school district received state funding and was required by the state to provide transportation services to students. *See Kenai Peninsula Borough,* 532 P.2d at 1025.

Although Alaska law explicitly provides that the state is not liable for the School District's debts, the School District argues that as a practical matter any judgment against the School District would be satisfied by state funds. Like the district court, the School District emphasizes that state funds provide ninety-eight percent of the School District's budget. The School District contends "that if this Court determined [in *Belanger* ] that California's Madera Unified School District was an arm of the state because it received approximately three-quarters of its funding from the state treasury, that [sic] the Nenana School District, which depends on the state to provide 98% of its budget, is likewise an arm of the state." *But see Grady Mun. Schs.,* 127 F.3d at 981(concluding that even in a case, like the present case, in which the state provides ninety-eight percent of the school board's budget, "the factor relating to the liability of the state treasury points away from Eleventh Amendment immunity, for the simple reason that the state of New Mexico is not *legally* liable for a judgment against a school district").

The School District's reliance on *Belanger,* however, is misplaced.[8] It was not the

---

8. Furthermore, we have already rejected the School District's argument that because a money judgment against the School District could exceed the School District's limited resources, the first *Mitchell* factor should weigh in favor of immunity. *See Durning,* 950 F.2d at 1424 n. 2 ("The latter inquiry would be relevant to a determination of whether the

three-quarters funding from the state that was the basis for our decision in *Belanger.* Rather, the holding in *Belanger* was premised on "the unique structure of the California school system," *Eason,* 303 F.3d at 1142, an outgrowth of the California Supreme Court's rulings that the equal protection provisions of the state constitution require strict statewide equalization of school spending per pupil [9] and the state's adoption of Proposition 13, which greatly limits property taxes. *Belanger,* 963 F.2d at 251. In California, there is

> strict state control of public school funding. The state sets a revenue limit for each school district based on average attendance, subtracts property tax revenues from that limit, and allocates the balance to the school district from the state school fund. In short, the state determines the amount of money that school districts may spend per pupil and then provides the necessary state funds.

*Id.* at 252 (citations omitted). "By virtue of this revenue limit system, 'state and local revenue is commingled in a single fund under state control, and local tax revenue lost to a judgment must be supplanted by the interchangeable state funds already in the district budget.'" *Eason,* 303 F.3d at 1142 (quoting *Belanger,* 963 F.2d at 252).

Alaska's school funding structure, however, is more similar to the Nevada school funding structure at issue in *Eason* and not at all similar to the California school funding structure at issue in *Belanger.* *See Eason,* 303 F.3d at 1142–43; *Belanger,* 963 F.2d at 251–51; *see also* Alaska Stat. § 14.17.410("Public school funding"). Alaska school districts, like California and Nevada school districts, receive state funding. *Eason,* 303 F.3d at 1142; Alaska Stat. § 14.17.410(b)("Public school funding consists of state aid, a required local contribution, and eligible federal impact aid...."). But unlike California, neither Alaska nor Nevada's school funding is "commingled in a single fund under state control." *Belanger,* 963 F.2d at 252. Similar to Nevada, Alaska "establishes a minimum amount to be spent per pupil B known as [the basic need ] B and it uses state funds to guarantee that each district will have that minimum amount." *Eason,* 303 F.3d at 1142; Alaska Stat. § 14.17.410(b)(1) ("state aid equals basic need minus a required local contribution and 90 percent of eligible federal impact aid"); Alaska Stat. § 14.17.410(b)(1)(A)-(D) (describing how basic need is calculated by taking into account various factors). The amount of money Alaska contributes to each school district varies. While Alaska law provides that "[t]he legislature shall provide the state money necessary to maintain and operate the regional education attendance areas ... [,] the city council for a city school district [such as Nenana], shall provide the money that must be raised from local sources to maintain and operate the district." Alaska Stat. § 14.12.020(c). Because the School District is part of the Municipality of Nenana, a home rule city, it must provide a "required local contribution"; otherwise, it

---

defendant entity is judgment proof, but whether the entity is practically unable to pay some or all of the judgment says nothing about sovereign immunity or whether the state treasury is *legally pledged* to the debt.").

**9.** The Alaska Supreme Court, unlike the California Supreme Court, has never required strict equalization of school spending per pupil under the equal protection provisions of the state constitution. *See Serrano v. Priest,* 5 Cal.3d 584, 96 Cal.Rptr. 601, 487 P.2d 1241 (1971); *Serrano v. Priest,* 18 Cal.3d 728, 135 Cal.Rptr. 345, 557 P.2d 929 (1976). Instead, the Alaska Supreme Court has held that "[u]nlike most state constitutions, the Constitution of Alaska does not require uniformity in the school system." *Hootch v. Alaska State–Operated Sch. Sys.,* 536 P.2d 793, 803 (Alaska 1975).

will not receive state funds. Alaska Stat. § 14.17.410(d). In addition to the required local contribution, the School District may generate additional funds to those provided by the state and federal impact aid. Alaska Stat. § 14.17.410(c). Thus, like Nevada, Alaska

> guarantees only a minimum amount of per pupil spending, not a maximum, and because school districts may generate funds in addition to those provided by the state, it is not necessarily true that an amount withdrawn from a school district's account in order to pay a judgment will be replaced with state money.

*Eason,* 303 F.3d at 1143(discussing Nevada's educational funding system).[10]

Like the defendants in *Eason,* the School District "make[s] much of the fact that the State ... limits school districts' ability to raise local revenue." *Id.* The School District is correct in asserting that Alaska "caps" the revenue that a city may contribute to its school district in addition to the required local contribution. Alaska Stat. § 14.17.410(c)(1)-(2)(the local contribution cannot be greater than the "equivalent of a two mill tax levy on the full and true value of the taxable real and personal property in the district" or "23 percent of the district's basic need for the fiscal year"). Contrary to the School District's assertions, however, this "tax cap'F" is not similar to the "tax cap" of California's Proposition 13. *See Belanger,* 963 F.2d at 251–52 (discussing Proposition 13's property tax cap and its effects). Rather, this "tax cap" is similar to the limits placed by Nevada statutes that gives Nevada "school districts ... very little discretion in tax revenues." *Eason,* 303 F.3d at 1143(citing Nev.Rev.Stat. § 387.1235, *amended by* 2003 Nev. Stat. 469("Local funds available for public schools"); Nev.Rev.Stat. § 374.010 *et seq.* (2002) ("Local School

Support Tax Law")). In *Eason,* this court found the fact "[t]hat the State ... controls how local revenue is generated ... is not relevant for purposes of the first *Mitchell* factor." *Eason,* 303 F.3d at 1143. What is relevant is whether defendants can show that the state bears a legal obligation to satisfy a judgment against the School District, or that "any money withdrawn from the [School] District's account to satisfy such a judgment will necessarily be replaced with state funds, as in California." *Id.* Here, the School District can show neither.

The School District also relies on *Alaska Cargo Transp., Inc. v. R.R. Corp.,* 5 F.3d 378 (9th Cir.1993). In *Alaska Cargo,* we held that the Alaska Railroad Corporation was an arm of the state entitled to Eleventh Amendment immunity even though state law provided that the railroad, not the state, was liable for a money judgment against the railroad. We stated that the most critical factor was "whether a judgment would impact the state treasury." *Id.* at 380. That statement must be taken in context, however. We further stated in *Alaska Cargo* that, because the state was not directly liable on a judgment, the Railroad must be able to show that "the state is nonetheless the 'real, substantial party in interest.'" *Id.* (quoting *Durning,* 950 F.2d at 1423(internal quotation marks omitted)). We emphasized the unique role of the Alaska Railroad as the "life-support system for thousands of Alaskans" that made it a "central government function." *Id.* at 381. We also relied on the fact that, at the time in question, the State of Alaska had to maintain rail carrier services across its system because, if it failed, the Railroad's real property would revert to the federal government unless Alaska paid its fair market value. *See id.* We pointed

---

**10.** As evident from the record, the School District has employer's liability insurance with policy limits of $2.5 million per occurrence and a "$NIL" deductible.

out that Alaska law *required* the Railroad to seek money from the legislature if a particular service was not self-sustaining. In light of all of these factors tending to make the State the real party in interest, we concluded that the Railroad was the arm of the state. *See id.*

In the case before us, the defendant is not a single, unique entity upon which a great part of the state depends for its lifeline, and there is no comparable structure of compulsion thrusting the State into the role of real, substantial party in interest. As we have already pointed out in comparing the Alaska district system to that of Nevada, there is here no showing, in *Eason's* words, that "any money withdrawn from the [School] District's account to satisfy such a judgment will necessarily be replaced with state funds." *Eason*, 303 F.3d at 1143. In the absence of such a showing, we adhere to our basic proposition that "the fact that the state may ultimately *volunteer* to pay the judgment . . . is immaterial; the question is whether the state treasury is legally obligated." *Durning*, 950 F.2d at 1425 n. 3.[11] The State of Alaska is not legally obligated to pay the District's debt. We conclude, therefore, that the first and most important *Mitchell* factor weighs against finding that the School District is an arm of the state.

2. Whether the School District performs central governmental functions

With regard to the second *Mitchell* function, Alaska falls somewhere between California and Nevada. While Alaska maintains pervasive control over education, unlike California it does not "treat[ ] public schooling as a state-wide or central governmental function." *Belanger*, 963 F.2d at 253.

We conclude, therefore, that the district court went too far in ruling that in Alaska "education is an essential state function."

The Alaska Constitution provides that "[t]he legislature shall by general law establish and maintain a system of public schools open to all children of the State." Alaska Const. art. VII, § 1. Nevada's constitution similarly provides that the state will create and provide for the support of a public school system. *See Eason*, 303 F.3d at 1143. However, the Alaska legislature, unlike the Nevada legislature, has not "expressly 'reaffirmed its intent that public education in the State . . . is essentially a matter for local control by local school districts.' " *Id.* at 1143–44 (quoting Nev. Rev.Stat. § 385.005 ("Declaration of legislative intent")). Instead, in *Macauley*, the Alaska Supreme Court stated that the Alaska Constitution,

> not only requires that the legislature 'establish' a school system, but also gives to that body the continuing obligation to 'maintain' the system. Finally, the provision is unqualified; no other unit of government shares responsibility or authority. That the legislature has seen fit to delegate certain educational functions to local school boards in order that Alaska schools might be adapted to meet the varying conditions of differing locations does not diminish this constitutionally mandated state control over education.

491 P.2d at 122. The district court relied heavily upon this statement in determining that education is an essential state function. However, pervasive state authority

---

11. In *Straabe v. Yupiit School District*, 1999 WL 33456490 (D.Alaska 1999), the district court held that a school district that was a Regional Education Attendance Area was an arm of the State because, whether or not the State accepted any responsibility for satisfying the Area's judgments, it would in fact pay such a judgment. It follows from our conclusion here that we do not accept this rationale.

and control do *not* determine whether an entity is a state agency or arm of the state for purposes of Eleventh Amendment immunity; nor is it conclusive in determining whether the entity performs central governmental functions. *See Mitchell,* 861 F.2d at 201. "[U]ltimate control of every state-created entity resides with the State, for the State may destroy or reshape any unit it creates. Political subdivisions exist solely at the whim and behest of the State, yet cities and counties do not enjoy Eleventh Amendment immunity." *Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 47, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994) (inner quotations and citation omitted).[12]

■ Instead, to determine whether an entity performs a central governmental function, the court must look at more than just state control over the entity. *See Belanger,* 963 F.2d at 253 (in determining if public schooling was a state function under California law, the court considered whether schools were treated as state agencies). Like the defendants in *Eason,* the School District "cannot point to any authority supporting the proposition that [Alaska] school districts are 'treated as state agencies under [Alaska] law' or that'[Alaska] law is well settled that *providing* public education is a state function.'" *Eason,* 303 F.3d at 1144 (emphasis added). Unlike California, Alaska has no state supreme court decision holding that school districts are agencies of the state. *See Belanger,* 963 F.2d at 253. Instead, the Alaska Supreme Court has labeled school districts "political subdivisions" and has held that a school district was not a state agency. *Kenai Peninsula Borough,* 532 P.2d at 1024, 1027.[13] In *Blue v. Stockton,* 355 P.2d 395 (Alaska 1960), the Alaska Supreme Court found that while "the school system of the state is a matter of general concern and not solely a municipal affair[, ] ... it does not follow ... that a city school board is therefore essentially a state agency." *Id.* at 397. Alaska no longer *provides* education, since the state dismantled the Alaska State–Operated School System, and replaced the state run system with REAAs. *See Northwest Arctic Reg'l Educ. Attendance Area v. Alaska Pub. Serv. Employees, Local 71,* 591 P.2d 1292, 1293 (Alaska 1979), *overruled on oth-*

---

12. Justice Brennan, writing on behalf of himself and three other Justices, offered the following guidance:

 The rule to be derived from our cases is that the Eleventh Amendment shields an entity from suit in federal court only when it is so closely tied to the State as to be the direct means by which the State acts, for instance a state agency. In contrast, when a State creates subdivisions and imbues them with a significant measure of autonomy, such as the ability to levy taxes, issue bonds, or own land in their own name, these subdivisions are too separate from the State to be considered its "arms." This is so even though these political subdivisions exist solely at the whim and behest of their State.

 *Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 313, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) (Brennan, J., concurring in part and concurring in the judgment) (citation omitted).

13. *Kenai Peninsula Borough* held that the state was not liable for a money judgment because the school district was not acting as an agent of the state. 532 P.2d at 1027. This decision was based upon the school furnishing transportation to students—as it was required by, and funded by, the state to do. *Id.* at 1021. The Alaska Supreme Court noted that "although the borough was required by state law to maintain and operate a system of public schools, the parties did not contend[ ] that the borough [school district] is an agent of the state in exercising the function of public education." *Id.* at 1025. The Alaska Supreme Court has yet to address whether a school district is an agent of the state for Eleventh Amendment immunity purposes. *See Duke,* 127 F.3d at 978(holding that the New Mexico school district and their governing boards are not arms of the state entitled to Eleventh Amendment immunity).

*er grounds, Alaska Commercial Fishing & Agri. Bank v. O/S Alaska Coast,* 715 P.2d 707, 709 n. 5 (Alaska 1986). Rather the duty to operate public schools, and thus *provide* education, is the duty of home rule cities such as Nenana. Alaska Stat. § 29.35.260(b) ("[a] home rule or first class city outside a borough is a city school district and shall establish, operate, and maintain a system of public schools"); Home Rule Charter of the Municipality of Nenana, art. IX ("Education").

To determine whether Alaska considers its public school system as performing a central governmental function, it is helpful to look at the language of other Alaska statutes to see whether they explicitly provide that an entity is performing a central governmental function. Chapter 14 of the Alaska Statutory Code, governing education in Alaska, does *not* state that school districts perform an "essential governmental function."

However, other Alaska statutes explicitly state that the governmental entity is providing an essential governmental function. As mentioned above, Alaska Stat. § 42.40.010 provides that "[t]he continued operation of the Alaska Railroad ... is considered an essential government function of the state." Alaska Stat. § 44.85.020 provides that the exercise of authority by the Alaska Municipal Bond Bank Authority "is considered an essential governmental function of the state." Alaska Stat. § 16.51.010 provides that "[e]xercise by the [Alaska Seafood Marketing Institute] of the powers conferred by this chapter is an essential governmental function of the state." Alaska Stat. § 14.42.280 provides that the real and per-

sonal property of the Alaska Student Loan Corporation (providing student aid for post-secondary education) is "devoted to an essential public and governmental function."

Under Alaska law, city and borough school districts are "political subdivisions," *Kenai Peninsula Borough,* 532 P.2d at 1023, and not agents of the state, and are not "so closely tied to the State as to be the direct means by which the State acts." *Feeney,* 495 U.S. at 313, 110 S.Ct. 1868(Brennan, J., concurring in part and concurring in the judgment). Providing public education is the duty of the school district, and the city and borough school districts are under the management and control of local school boards, not the state. *Hootch,* 536 P.2d at 798(citing Alaska Stat. § 14.12.020).

We conclude, therefore, that the district court erred in ruling that the second *Mitchell* factor favored immunity. We do recognize, however, that some of the constitutional and statutory provisions lean in the direction of immunity sufficiently to make the question somewhat close. At most, these provisions render the balance even, so that the second *Mitchell* factor favors neither side. At the least, they leave a slight incline against immunity. We need not resolve this slight difference, however, because we conclude that the other factors, particularly the first, preclude immunity.

3. Whether the School District has the power to sue and be sued

The School District does not dispute that it may sue or be sued in its own name.[14] Instead, the School District cor-

---

**14.** The district court stated that "[i]t is undisputed that the last three factors—whether the entity may sue or be sued; whether the entity has the power to take property in its own name or only the name of the state; and the corporate status of the entity—weigh against finding that Nenana is an arm of the state."

Unlike California or Nevada, Alaska has no particular statute providing that a city or borough school district can sue and be sued in its own name. *See Eason,* 303 F.3d at 1144 (citing Nev.Rev.Stat. § 386.010(3)); *Belanger,* 963 F.2d at 254 (citing Cal. Educ.Code § 35162 (West 1978)). Regional school

rectly points out that "this factor is entitled to less weight than the first two factors." *Belanger,* 963 F.2d at 254. Therefore, we conclude that the third *Mitchell* factor weighs slightly against finding that the School District is an arm of the state immune from suit under the Eleventh Amendment.

4. **Whether the School District has the power to take property in its own name**

There is no dispute that the School District can take property in its own name: the School District admits that it owns property. It appears that the authorization for city school districts to have property in their own name is derived from Alaska Stat. § 29.35.010(8)("General Powers [of Municipalities]"). Again, city school districts seem akin to arms of municipalities, and not arms of the state.

 Therefore, we conclude that the fourth *Mitchell* factor weighs against the finding that the School District is an arm of the state.

5. **The corporate status of the School District**

The final *Mitchell* factor is concerned with the extent to which the School District is an entity distinct from the state. The School District concedes that it is a distinct entity, but unpersuasively argues that because it is a "delegate of the State Legislature's authority to operate public schools," it does not have the independent corporate status that would prevent it from being treated as an arm of the State.

Neither Alaska nor Nevada statutes provide that the school district itself is a corporation. *See Eason,* 303 F.3d at 1144. In Nevada, however, the board of trustees, which runs the school district, is a corporation; accordingly, the *Eason* court found that the fifth *Mitchell* factor weighs against granting the District Eleventh Amendment immunity. *Id.* (citing Rev. Stat. § 386.110).

Similarly, in this case, the home rule municipality of Nenana, which "establish[es], operate[s], and maintain[s][the School District]," Alaska Stat. § 29.35.260(b), is a municipal corporation. Alaska Stat. § 29.04.010 ("Home Rule"). In *Blue,* the Alaska Supreme Court held "that a city school district is not a distinct entity, independent of a city. It depends for its existence upon the existence of the city. In fact, the school district and city are one and the same thing so far as corporate status is considered." 355 P.2d at 397.[15] Accordingly, we conclude that the fifth and final *Mitchell* factor also weighs against finding that the School District is an arm of the state entitled to

boards are expressly allowed to "sue and be sued." Alaska Stat. § 14.08.101(1) (Michie 2002) ("powers"), *amended by* 2003 Alaska Sess. Laws 126. But it appears that the authorization for city school districts to sue and be sued is derived from Alaska Stat. § 29.35.010(14) ("General Powers [of Municipalities]"). City school districts thus seem to be more like arms of municipalities than arms of the state.

15. While the holding in *Blue* appears to be no longer binding because it was not based on current Alaska education statutes, it remains highly instructive and persuasive. The statute the holding was based on provided that "[e]very city shall constitute a school district." S.L.A.1951, ch. 51, § 1 [§ 37–3–32, A.C.L.A.Cum.Supp.1957]. The current law reads that "each home rule and first class city in the unorganized borough is a city school district." Alaska Stat. § 14.12.010(1); *see also* Alaska Stat. § 29.35.260(b) ("[a] home rule or first class city outside a borough [like Nenana] is a city school district ...."). The practical difference between "every city *shall constitute* a school district" and "each home rule city *is* a city school district" is minimal.

immunity from suit under the Eleventh Amendment.

## B. Weighing of the *Mitchell* factors

After examining the nature of school districts in Alaska and how Alaska law regards school districts, we conclude that the *Mitchell* factors weigh against finding that the School District is an arm of the state entitled to Eleventh Amendment immunity. Alaska's public school system is similar to Nevada's public school system and distinct from California's unique public school system. Most importantly, Alaska is not legally required to satisfy any judgment against the School District. *See Eason*, 303 F.3d at 1144. Unlike California, Alaska will not necessarily satisfy an adverse money judgment against the school district with funds from the state treasury. *See Belanger*, 963 F.2d at 252. Thus, the first and most important factor weighs strongly against finding that the School District is entitled to Eleventh Amendment immunity.

Whether the School District performs a central governmental function is not as clear. City school districts in Alaska are not agents of the state as they are in California. And although Alaska maintains pervasive control over education, that control does not determine whether the School District *performs* a central governmental function. Alaska appears to resemble more closely Nevada in terms of whether providing education is a central governmental function, which weighs against finding that the School District is an arm of the state.

Even if we were to conclude that the School District performs a central governmental function, that would not change the final result because all other *Mitchell* factors weigh against finding that the School District is immune to suit under the Eleventh Amendment.

As the district court correctly found, the last three *Mitchell* factors—whether the School District may sue or be sued; whether the School District can take property in its own name or only in the name of the state; and the corporate status of the School District—weigh against finding that the School District is an arm of the state. The last three *Mitchell* factors instead illustrate that under Alaska law the School District is an arm of the municipality, not an arm of the state.

## IV. CONCLUSION

We find that the district court erroneously concluded that the School District is an arm of the state entitled to Eleventh Amendment immunity and hold that the School District is "to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." *Mt. Healthy City Sch. Dist.*, 429 U.S. at 280, 97 S.Ct. 568. We therefore REVERSE the district court's ruling and REMAND for further proceedings consistent with this opinion.

REVERSED and REMANDED.